**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 13, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee/Cross-Appellant,

v.

SUPREME COURT OF NEW MEXICO;
THE DISCIPLINARY BOARD OF NEW
MEXICO; OFFICE OF THE
DISCIPLINARY COUNSEL OF NEW
MEXICO,

     Defendants - Appellants/Cross-
     Appellees.

_____

THE AMERICAN BAR ASSOCIATION,

     Amicus Curiae.

Nos. 14-2037 & 14-2049
(D.C. No. 1:13-CV-00407-WJ-SMV)
(D. N.M.)

_____

**ORDER**
_____

Before **TYMKOVICH**, Chief Judge, **HOLMES**, and **BACHARACH**, Circuit Judges.
_____

This matter is before the court on the petition for rehearing filed by the state of

New Mexico parties, as well as the United States' petition for rehearing en banc. Upon

consideration of the New Mexico petition, the original panel grants panel rehearing in

part and only to the extent of the changes made to page 18, footnote 6, and pages 21-23

of the attached revised opinion. The clerk is directed to file the revised decision *nunc pro tunc* to the original filing date of June 7, 2016.

With respect to the United States' petition, the original panel voted to deny any implicit request for panel rehearing. In addition, that petition was also circulated to all of the judges of the court who are in regular active service and who are not recused. As no judge on the panel or the court called for a poll, the United States' petition is denied.

In granting limited panel rehearing with respect to New Mexico's petition, we note and emphasize that the portion of the request seeking en banc review remains pending. That part of the petition remains under advisement.

Entered for the Court

ELISABETH A. SHUMAKER, Clerk

FILED
United States Court of Appeals
Tenth Circuit

**June 7, 2016**

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

UNITED STATES OF AMERICA,

> Plaintiff-Appellee/Cross-
> Appellant,

v.

SUPREME COURT OF NEW MEXICO;
THE DISCIPLINARY BOARD OF NEW
MEXICO; OFFICE OF THE
DISCIPLINARY COUNSEL OF NEW
MEXICO,

> Defendants-Appellants/Cross-
> Appellees.

_____

THE AMERICAN BAR ASSOCIATION,

> Amicus Curiae.

Nos. 14-2037 & 14-2049

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. 1:13-CV-00407-WJ-SMV)**

Paul J. Kennedy of Paul Kennedy & Associates, P.C., Albuquerque, NM (Arne Leonard
of Paul Kennedy & Associates, P.C., Albuquerque, NM, with him on the briefs) for
Defendants-Appellants/Cross-Appellees.

Douglas N. Letter, Appellate Staff Civil Division, United States Department of Justice
(Stuart F. Delery, Assistant Attorney General; Damon P. Martinez, United States
Attorney for the District of New Mexico; and Jaynie Lilley, Appellate Staff Civil
Division, United States Department of Justice, with him on the briefs), for

Plaintiff-Appellee/Cross-Appellant.

James R. Silkenat, President, American Bar Association, Chicago, IL, and Michael S. Greco, John Longstreth, and Molly Suda, K&L Gates, LLP, Washington, DC, on the brief of the American Bar Association, in support of Defendants-Appellants/Cross-Appellees.

———————————

Before **TYMKOVICH**, Chief Judge, **HOLMES**, and **BACHARACH**, Circuit Judges.

———————————

**HOLMES**, Circuit Judge.

———————————

New Mexico Rule of Professional Conduct 16-308(E) ("Rule 16-308(E)") prohibits a prosecutor from subpoenaing a lawyer to present evidence about a past or present client in a grand-jury or other criminal proceeding unless such evidence is "essential" and "there is no other feasible alternative to obtain the information." In a lawsuit brought against the New Mexico Supreme Court, and the state's Disciplinary Board and Office of Disciplinary Counsel ("Defendants"), the United States claims that the enforcement of this rule against federal prosecutors licensed in New Mexico violates the Supremacy Clause of the U.S. Constitution. U.S. Const., art. VI, § 2. The district court concluded, on cross-motions for summary judgment, that Rule 16-308(E) is preempted with respect to federal prosecutors practicing before grand juries, but is not preempted outside of the grand-jury context. We agree. Exercising jurisdiction under 28 U.S.C. § 1291, we **affirm**.

# I

## A

The roots of Rule 16-308(E) can be traced to the adoption by the American Bar Association ("ABA") of Model Rule of Professional Conduct 3.8(e) ("Model Rule 3.8(e)"). Faced with what was perceived to be an "increasing incidence of grand jury and trial subpoenas directed toward attorneys defending criminal cases," ABA Crim. Justice Section, Report with Recommendation to the ABA House of Delegates No. 122B, at 2 (Feb. 1988), the ABA issued Model Rule 3.8(e)[1] in 1990 "to limit the issuance of lawyer subpoenas in grand jury and other criminal proceedings to those situations in which there is a genuine need to intrude into the client-lawyer relationship," Model Rules of Prof'l Conduct r. 3.8(e) cmt. 4 (Am. Bar Ass'n 2015). As adopted, Model Rule 3.8(e) stated:

> The prosecutor in a criminal case shall: . . .
>
> ([e]) not subpoena a lawyer in a grand jury or other criminal proceeding to present evidence about a past or present client unless:
>
> > (1)    the prosecutor reasonably believes:
> >
> > > (a)    the information sought is not protected from disclosure by an applicable privilege;
> > >
> > > (b)    the evidence sought is essential to the successful completion of an ongoing investigation or prosecution;

---

[1]    Originally adopted as Model Rule 3.8(f), the rule was re-designated as Model Rule 3.8(e) in 2002. We refer to it throughout this opinion as Model Rule 3.8(e) to avoid any possible confusion.

(c) there is no other feasible alternative to obtain the information; and

(2) the prosecutor obtains prior judicial approval after an opportunity for an adversarial proceeding.

ABA Standing Comm. on Ethics & Prof'l Responsibility, Report with Recommendation to the ABA House of Delegates No. 118, at 1 (Feb. 1990). The rule, as originally adopted, thus consisted of two components. Subsection (e)(1) governed prosecutors' reasonable belief about the content of the information sought—i.e., that it was not privileged, was essential, and could not be obtained from any other feasible alternative. Subsection (e)(2) imposed a judicial preapproval requirement before a prosecutor could obtain an attorney subpoena.

Several states promulgated versions of Model Rule 3.8(e), and legal challenges to these rules produced conflicting outcomes. The Third Circuit, for example, concluded that the judicial preapproval requirement in Pennsylvania's version of Model Rule 3.8(e) conflicted with federal rules governing the issuance of subpoenas, and held that the enforcement of the rule against federal prosecutors was preempted. *See Baylson v. Disciplinary Bd. of Supreme Court of Pa.*, 975 F.2d 102, 111–12 (3d Cir. 1992). In contrast, the First Circuit found that Rhode Island's version of the rule created "no conflict with the Supremacy Clause." *Whitehouse v. U.S. Dist. Court for Dist. of R.I.*, 53 F.3d 1349, 1365 (1st Cir. 1995).

Before our court, the United States challenged Colorado's adoption of Model Rule 3.8(e). Specifically, we were called upon to review the district court's dismissal of the

4

United States's action on jurisdictional grounds—that is, "[t]he district court dismissed the complaint for lack of subject matter jurisdiction, stating that the United States did not have standing because it did not allege that federal prosecutors had suffered any actual or imminent injury from application of the rules." *United States v. Colo. Supreme Court* ("*Colorado Supreme Court I*"), 87 F.3d 1161, 1163 (10th Cir. 1996). We reversed, however, concluding that, even though no federal prosecutor had been sanctioned under Colorado's rule, the potential that it would "interfere with federal prosecutors in their conduct of criminal proceedings and change the nature of the federal grand jury in Colorado" was a sufficient injury in fact to render the case justiciable. *Id.* at 1165.

The case later returned to us after the district court ruled on the merits of the United States's challenge. *See United States v. Colo. Supreme Court* ("*Colorado Supreme Court II*"), 189 F.3d 1281 (10th Cir. 1999). In the interim, the legal landscape had been altered in two salient ways. First, following the ABA's lead,[2] the Colorado Supreme Court amended its Rule 3.8(e) in 1997 by removing the judicial preapproval requirement.[3] *Id.* at 1284. Second, in 1998, Congress stepped in and enacted the

[2] In 1995, the ABA amended Model Rule 3.8(e) to remove the judicial preapproval requirement. *See Stern v. U.S. Dist. Court for the Dist. of Mass.*, 214 F.3d 4, 9 (1st Cir. 2000).

[3] Thus, by the time of *Colorado Supreme Court II*, Colorado Rule 3.8(e)—and the ABA's Model Rule 3.8(e) on which it was based—only contained the reasonable-belief requirement. It provided:

> The prosecutor in a criminal case shall: . . .
>
> (e)    not subpoena a lawyer in a grand jury or other criminal

5

McDade Act, 28 U.S.C. § 530B, which requires that:

> (a) An attorney for the Government shall be subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State.

> (b) The Attorney General shall make and amend rules of the Department of Justice to assure compliance with this section.

The Attorney General then promulgated regulations, pursuant to § 530B(b), stating that the statute "should not be construed in any way to alter federal substantive, procedural, or evidentiary law." 28 C.F.R. § 77.1(b).

As we framed it in *Colorado Supreme Court II*, the "question whether Rule 3.8 violate[d] the Supremacy Clause now turn[ed] on whether the rule [wa]s a rule of professional ethics clearly covered by the McDade Act, or a substantive or procedural rule that [wa]s inconsistent with federal law." 189 F.3d at 1284. In a nutshell, the essence of the inquiry was whether Rule 3.8 was preempted by federal law. Significantly,

---

> proceeding to present evidence about a past or present client unless the prosecutor reasonably believes:

> (1) the information sought is not protected from disclosure by any applicable privilege;

> (2) the evidence sought is essential to the successful completion of an ongoing investigation or prosecution;

> (3) there is no other feasible alternative to obtain the information.

6

we only addressed there, however, the question of whether Colorado's Rule 3.8 was preempted outside of the grand-jury context—*viz.*, the "trial" context.[4] In this regard, in defining the scope of our analysis, we stated: "In its decision on remand, the district court determined that the restriction on grand jury proceedings violated the Supremacy Clause. Defendants have not appealed that determination and we do not address it here." *Id.*

Turning to the question at hand, we observed that Colorado's Rule 3.8, *inter alia*, prescribed "broad normative principles of attorney self-conduct," and we determined that "the rule in its current incarnation is a rule of ethics applicable to federal prosecutors by the McDade Act." *Id.* at 1288–89. Nevertheless, we proceeded to determine whether this ethics rule was otherwise "inconsistent with federal law" and thus preempted. *Id.* at 1289. We concluded that it was not, and therefore it could be "enforced by the state defendants against federal prosecutors." *Id.*

---

[4] In *Colorado Supreme Court II*, we briefly intimated in a footnote that the universe of attorney subpoenas implicated by rules like Colorado's consists of "grand jury and trial subpoenas." 189 F.3d at 1286 n.6; *see also id.* at 1284 n.3 (describing the First Circuit as "holding federal courts could adopt a rule requiring a federal prosecutor at either the *grand jury or trial* stage to obtain judicial approval before serving a subpoena on counsel to compel evidence concerning a client" (emphasis added)). We did not define the term "trial subpoenas" there, and it seems likely that, similar to the First Circuit, we were "us[ing] the term 'trial subpoenas' as a shorthand for *all other subpoenas* (*e.g.*, subpoenas issued in the course of pretrial hearings)"—i.e., all attorney subpoenas issued by federal prosecutors in criminal proceedings other than grand-jury subpoenas. *Stern*, 214 F.3d at 18 n.5 (emphasis added). In any event, we deem this shorthand convention to be helpful. We note that the United States employs it, and Defendants do not object. Accordingly, as needed, we use it here.

**B**

Against this backdrop, in 2008, New Mexico adopted Rule 16-308(E), which

provides that:

> A prosecutor in a criminal case shall: . . .
>
> E.      not subpoena a lawyer in a grand jury or other criminal proceeding to present evidence about a past or present client unless the prosecutor reasonably believes:
>
>> (1)      the information sought is not protected from disclosure by any applicable privilege;
>>
>> (2)      the evidence sought is essential to the successful completion of an ongoing investigation or prosecution; and
>>
>> (3)      there is no other feasible alternative to obtain the information[.] . . .

N.M. Rules of Prof'l Conduct, N.M.R.A. 16-308(E).  This rule is identical to the

Colorado rule that we reviewed in *Colorado Supreme Court II*.  Though the U.S. District

Court for the District of New Mexico has generally adopted the New Mexico Rules of

Professional Conduct, *see* D.N.M.LR-Cr. 57.2, it has chosen not to adopt Rule 16-308(E),

*see* D.N.M. Admin. Order No. 10-MC-00004-9 (Mar. 23, 2010).  Nonetheless, the rule

continues to apply to the conduct of federal prosecutors licensed to practice in New

Mexico, and a violation of the rule can form the basis for disciplinary sanctions.  *See*

N.M. Rules Governing Discipline, N.M.R.A. 17-205.

The United States filed suit against Defendants in April 2013, arguing that the

second and third requirements of Rule 16-308(E)—i.e., the essentiality and no-other-

feasible-alternative conditions—were preempted by federal law. From the outset, these two provisions have been the only ones at issue in this litigation.[5] Defendants moved to dismiss the complaint for lack of subject-matter jurisdiction, arguing that the United States lacked standing and that the case was not ripe in the absence of an actual or threatened disciplinary action against a federal prosecutor. The district court rejected this argument and denied the motion. Relying in large part on our decision in *Colorado Supreme Court I*, it concluded that the complaint sufficiently alleged an injury in fact, to the extent that Rule 16-308(E) altered federal prosecutors' attorney-subpoena practice. It also determined that the case was ripe because "the preemption issue is purely a question of law." Aplts.' App. at 152 (Mem. Op. & Order Den. Mot. to Dismiss, filed Nov. 1, 2013).

The United States moved for summary judgment in June 2013, before the parties had engaged in any discovery. Attached to its summary-judgment motion, the United States submitted the affidavit of an Assistant U.S. Attorney in the District of New Mexico. The declaration described several instances in which prosecutors in the U.S. Attorney's Office ("USAO") had issued attorney subpoenas prior to the enactment of

---

[5]    It is undisputed that the United States does not challenge the first provision of Rule 16-308(E)—*viz.*, subsection (E)(1)'s directive that a federal prosecutor must have a reasonable belief that the information sought from an attorney is not protected from disclosure by a privilege. In other words, this subsection is not at issue here. Throughout this opinion, for convenience, we frequently refer in general terms to the United States's challenge to New Mexico's Rule 16-308(E), without segregating out the two provisions of the rule that are actually at issue. Nonetheless, we underscore that a challenge to subsection (E)(1) is not before us.

9

Rule 16-308(E); it suggested that, even though "[t]his evidence was obtained in a lawful manner [and] implicated no privilege," had Rule 16-308(E) been in effect, "it is unlikely the prosecutor would have served the subpoena[s]." *Id.* at 80–81 (Decl. of Sasha Siemel, filed June 28, 2013).

Addressing the rule's current effect on the USAO's work, the declarant noted that "Rule 11-308(E) has a 'chilling' effect on prosecutors." *Id.* at 83. After averring that there are "many examples of such situations," the declaration discussed, in general terms—with the aim of preserving grand-jury secrecy—several specific instances in which prosecutors "have already actually [been] hampered . . . in the performance of their otherwise lawful duties" by concerns that they would be disciplined for violating the essentiality or no-other-feasible-alternative conditions of Rule 16-308(E). *Id.* at 84. The declaration further provided:

> These situations demonstrate that well-meaning prosecutors using legal means of obtaining evidence of criminality are subject to discipline simply for performing their duties. Federal grand juries in the District of New Mexico will continue in the future to need evidence of crimes from lawyers. In many such cases, the most appropriate means of obtaining that evidence will be by subpoena. . . . If enforced against federal prosecutors, Rule 16-308(E) will interfere directly with efforts of this Office and the Department of Justice to enforce the criminal laws of the United States.

*Id.* at 88–89.

Defendants filed a motion pursuant to Federal Rule of Civil Procedure 56(d), asking the court to delay ruling on the United States's summary-judgment motion pending the completion of discovery. In the alternative, they moved for summary

10

judgment on the existing record, claiming that Rule 16-308(E) was a permissible ethics rule under the McDade Act and our opinion in *Colorado Supreme Court II*. The district court denied Defendants' Rule 56(d) motion, concluding that further factual development was unnecessary to decide the "purely legal question" of "whether or not Rule 16-308(E) is an ethical rule or a substantive rule." *Id.* at 261 (Order Den. Defs.' 56(d) Request for Extension of Time, filed Nov. 27, 2013).

After further briefing and argument, the court granted partial summary judgment in favor of the United States and partial summary judgment in favor of Defendants. Specifically, it determined that our decision in *Colorado Supreme Court II* compelled the conclusion that Rule 16-308(E) was not preempted by federal law as to criminal proceedings outside of the grand-jury context. However, it determined that the rule conflicted with "three strong governmental interests in grand jury proceedings of '[(1)] affording grand juries wide latitude, [(2)] avoiding minitrials on peripheral matters, and [(3)] preserving a necessary level of secrecy.'" *Id.* at 321 (Mem. Op. & Order, filed Feb. 3, 2014) (alterations in original) (quoting *United States v. R. Enters., Inc.*, 498 U.S. 292, 300 (1991)). In particular, the court noted that the rule imposed "a higher burden on federal prosecutors that is simply not warranted at the grand jury stage" and threatened grand-jury secrecy by forcing prosecutors to disclose details of confidential investigations in order to avoid disciplinary sanctions. *Id.* at 322.

The district court thus upheld the application of Rule 16-308(E) to federal prosecutors' issuance of attorney subpoenas for criminal proceedings *outside* of the

11

grand-jury context, but enjoined Defendants from "instituting, prosecuting, or continuing any disciplinary proceeding or action against any federal prosecutor for otherwise lawful actions taken in the course of a grand jury investigation or proceeding on the ground that such attorneys violated Rule 16-308(E) of the New Mexico Rules of Professional Conduct." *Id.* at 326–27 (Final J., filed Feb. 3, 2014).

## II

Both parties appeal from the district court's judgment. Defendants challenge the district court's subject-matter jurisdiction, its denial of their request for further discovery, its holding that Rule 16-308(E) conflicts with federal law governing grand juries, and the scope of the injunction that the court issued. The United States challenges the district court's conclusion that Rule 16-308(E) is not preempted outside of the grand-jury context. The United States's appellate challenge, however, is primarily form, not substance. Though it seeks to "preserve [the preemption issue] for possible further review," Aplee.'s/Cross-Aplt.'s Reply Br. ("U.S. Reply Br.") at 12, the United States acknowledges the precedential force of *Colorado Supreme Court II* and thus concedes that Rule 16-308(E) is not preempted by federal law outside of the grand-jury context. Consequently, we resolve the United States's appeal in summary fashion below. The heart of the parties' dispute relates to whether Rule 16-308(E) is preempted relative to federal prosecutors' issuance of attorney subpoenas in the grand-jury context. Consequently, our analysis naturally focuses extensively on this issue. However, before reaching the merits of this question, we must address Defendants' threshold contentions

12

regarding subject-matter jurisdiction and the district court's refusal to allow them further discovery.

## A

Defendants claim that the district court lacked subject-matter jurisdiction over this dispute because the United States does not have standing and because the case is not ripe for review. We review questions of justiciability—including standing and ripeness—de novo. *See Kan. Judicial Review v. Stout*, 519 F.3d 1107, 1114 (10th Cir. 2008); *accord Roe No. 2 v. Ogden*, 253 F.3d 1225, 1228, 1231 (10th Cir. 2001). We determine ultimately that there is an adequate legal basis for subject-matter jurisdiction here.

## 1

Standing, as "a component of the case-or-controversy requirement [of Article III], serves to ensure that the plaintiff is 'a proper party to invoke judicial resolution of the dispute.'" *Habecker v. Town of Estes Park*, 518 F.3d 1217, 1223 (10th Cir. 2008) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). In order to demonstrate standing, a plaintiff must show: "(1) that he or she has 'suffered an injury in fact,' (2) that the injury is 'fairly traceable to the challenged action of the defendant,' and, (3) that it is 'likely' that 'the injury will be redressed by a favorable decision.'" *Cressman v. Thompson*, 719 F.3d 1139, 1144 (10th Cir. 2013) (quoting *Awad v. Ziriax*, 670 F.3d 1111, 1120 (10th Cir. 2012)).

Defendants challenge the adequacy of the United States's allegations of injury at both the pleading and summary-judgment stages. They also claim that any harm that the

13

United States suffered was self-inflicted—notably, based on a speculative fear of disciplinary sanctions—and is thus insufficient to establish an injury in fact. We reject these arguments, concluding that the United States has standing to bring this lawsuit in federal court.

**a**

"When evaluating a plaintiff's standing at [the motion to dismiss] stage, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Cressman*, 719 F.3d at 1144 (alteration in original) (quoting *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1089 (10th Cir. 2006) (en banc)); *accord S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1152 (10th Cir. 2013). While the burden of establishing standing at this stage of the litigation "is lightened considerably," *Petrella v. Brownback*, 697 F.3d 1285, 1292 (10th Cir. 2012), "[t]he injury alleged must be 'concrete and particularized,'" *id.* at 1293 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).

The complaint here alleges that (1) Rule 16-308(E) imposes higher substantive standards for grand-jury and trial subpoenas than those established by federal law; (2) approximately seventy federal prosecutors in the District of New Mexico are licensed in New Mexico, and are thus subject to discipline under the New Mexico Rules of Professional Conduct; (3) these federal prosecutors have "changed their practices in criminal investigations" and have been deterred from issuing attorney subpoenas for fear of disciplinary proceedings under Rule 16-308(E), Aplts.' App. at 13 (Compl., filed Apr.

14

30, 2013); and (4) as a result, the information available to grand juries and courts in the District of New Mexico has been limited—impairing the United States's interest in the "effective conduct of federal criminal investigations and prosecutions," *id.* at 18.

In *Colorado Supreme Court I*, we concluded that an alleged injury of a similar nature—*viz.*, the "delays [in] the presentation of evidence to grand juries" due to the enforcement of a state attorney-subpoena rule—established a "concrete, particularized, and actual injury in fact." 87 F.3d at 1165; *see id.* ("These allegations are sufficient to withstand a motion to dismiss."). Defendants seek to distinguish that decision because the Colorado rule at issue involved a judicial preapproval requirement; such a distinction, however, is not persuasive. We specifically addressed the essentiality and no-other-feasible-alternative conditions—which appear verbatim in New Mexico's Rule 16-308(E)—and concluded that these "require[d] far more from federal prosecutors" and "set a higher standard for obtaining attorney subpoenas" than is required by federal law or internal agency guidelines. *Id.* at 1166. In other words, we held that these two conditions imposed sufficiently concrete and particularized injuries on the United States to give it standing.

Thus, at the motion-to-dismiss stage, the United States's specific averments—i.e, indicating that Rule 16-308(E) has deterred federal prosecutors from issuing otherwise-permissible attorney subpoenas, thereby limiting the presentation of relevant evidence in grand-jury and other criminal proceedings—"sufficiently allege[ ] the injury in fact required for standing." *Id.* at 1167.

15

**b**

At the summary-judgment stage, mere allegations no longer suffice; instead "the elements of standing must be set forth, through specific facts, by affidavit or other evidence." *Tandy v. City of Wichita*, 380 F.3d 1277, 1284 (10th Cir. 2004); *accord Protocols, LLC v. Leavitt*, 549 F.3d 1294, 1298 (10th Cir. 2008). Defendants claim that the declaration submitted with the United States's motion for summary judgment lacks the requisite specificity because it "does not tie any alleged past injury to the application of the challenged rule" and "does not identify any particular subpoena that is presently at issue." Aplts.'/Cross-Aplees.' Principal Br. ("Aplts.' Opening Br.") at 34.

Contrary to Defendants' assertions, the summary-judgment declaration contains several factual statements demonstrating how Rule 16-308(E) has worked to the detriment of federal prosecutors. In particular, after generally averring that there are "many examples of such situations," the declaration specifically describes several instances in which prosecutors "have already actually [been] hampered . . . in the performance of their otherwise lawful duties" by concerns that they would be disciplined for violating the essentiality or no-other-feasible-alternative conditions of Rule 16-308(E). Aplts.' App. at 84. For example, the declaration offered the following:

> The [USAO] investigated an investment fraud scheme perpetrated by a target who, upon learning that he was under investigation, hired a criminal defense attorney. The target used money generated by the scheme to pay for his criminal defense, but he told a witness he had used the money to pay the attorney for legal work related to the supposed investment. Only the target and the attorney were in a position to testify that the victim funds were used for his criminal

16

defense and not for any actual investment-related purposes. The threat of ethical sanctions posed by Rule l 6-308(E) prevented the prosecutor from seeking this important evidence from the attorney. Consequently, had the subpoena been issued, the prosecutor would have risked being accused of seeking evidence that might later have been deemed obtainable by alternative means or not 'essential' under Rule 16-308(E).

*Id.* at 84–85. This and the other examples offered in the declaration illustrate the United States's alleged injury with adequate particularity.

Furthermore, prosecutors' efforts to avoid sanctions, and the resulting reduction in available evidence in grand-jury and other criminal proceedings, demonstrate sufficient injuries to establish federal-court jurisdiction. *See Cressman*, 719 F.3d at 1145 (concluding that costs "incur[red] to avoid prosecution" could confer standing on the plaintiff); *Colorado Supreme Court I*, 87 F.3d at 1167 ("[E]fforts to avoid litigation do not cast doubt on standing . . . ."); *cf. Stern v. U.S. Dist. Court for the Dist. of Mass.*, 214 F.3d 4, 11–12 (1st Cir. 2000) (citing *Colorado Supreme Court I* in addressing ripeness, and noting that "[t]he threat of ethics enforcement is genuine, compliance costs are real and immediate, and the chilling effect on attorney subpoena requests constitutes an injury sufficient to support a justiciable controversy"). Moreover, the declaration discusses a case in which counsel for a criminal defendant sought to quash an attorney subpoena on the basis that the prosecutor had obtained it in violation of Rule 16-308(E). Although this attempt to quash the subpoena failed, the declarant avers that the defense lawyer could have also filed an ethics complaint against the prosecutor. *See generally* N.M. Rules Governing Discipline, N.M.R.A. 17-102(A) (stating that the Disciplinary Board may

17

initiate an investigation "upon complaint by any person").

In sum, we are satisfied that, at the summary-judgment phase, the United States adequately demonstrated standing.[6]

## c

However, Defendants maintain that, in the absence of any actual or threatened enforcement action based on a particular subpoena, federal prosecutors have impermissibly attempted to "manufacture standing merely by inflicting harm on themselves" by voluntarily declining to issue certain attorney subpoenas. Aplts.' Opening Br. at 28 (quoting *Clapper v. Amnesty Int'l USA*, --- U.S. ----, 133 S. Ct. 1138, 1151 (2013)).

## i

We do not require "a plaintiff [to] risk actual prosecution before challenging an allegedly unconstitutional . . . statute." *Bronson v. Swensen*, 500 F.3d 1099, 1107 (10th Cir. 2007). "Standing may still exist even when a plaintiff ends the proscribed behavior, so long as a credible threat remains that such behavior, if taken in the future, would be

---

[6]     Defendants also claim that they were impermissibly "forced to accept Plaintiff's standing based on . . . Plaintiff's 'self-description' of federal prosecutors' activities in New Mexico." Aplts.' Opening Br. at 35 (quoting *Summers*, 555 U.S. at 497). However, for purposes of resolving Defendants' cross-motion for summary judgment on the standing issue, the district court appropriately took the position that the nonmovant United States's particularized facts set forth in an affidavit or declaration "will be taken to be true." *Colo. Cross-Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211 (10th Cir. 2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

prosecuted." *Id.* at 1108; *see also D.L.S. v. Utah*, 374 F.3d 971, 975 (10th Cir. 2004) (requiring an "objectively justified fear of real consequences, which can be satisfied by showing a credible threat of prosecution or other consequences following from the statute's enforcement").

The threat of prosecution is generally credible where a challenged "provision on its face proscribes" the conduct in which a plaintiff wishes to engage, and the state "has not disavowed any intention of invoking the . . . provision" against the plaintiff. *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979); *see, e.g.*, *Holder v. Humanitarian Law Project*, 561 U.S. 1, 16 (2010) (concluding that plaintiffs had alleged a credible threat of prosecution where the "Government has not argued . . . that plaintiffs will not be prosecuted if they do what they say they wish to do"); *Cressman*, 719 F.3d at 1145 (holding that the threat of prosecution was credible where state officials had informed the plaintiff that he could be prosecuted for disobeying the challenged statute); *cf. Stern*, 214 F.3d at 10 (concluding that the U.S. Attorney's suit was ripe where the rule imposed new substantive and procedural requirements on federal prosecutors and "Bar Counsel ha[d] stated unequivocally that he w[ould] enforce those requirements").

Here, federal prosecutors licensed in New Mexico are bound by the entirety of the New Mexico Rules of Professional Conduct, including the challenged provisions of Rule 16-308(E), and may be disciplined for violating those rules. *See* N.M. Rules Governing Discipline, N.M.R.A. 17-205. Rule 16-308(E) explicitly proscribes the types of attorney subpoenas federal prosecutors under certain circumstances may want to issue—namely,

19

those that are not "essential" to an investigation and for which a feasible alternative might exist. And the federal prosecutor's declaration submitted by the United States provides concrete evidence of ongoing desire and need of prosecutors in carrying out their lawful duties to issue such subpoenas. *Cf. Colo. Outfitters Ass'n v. Hickenlooper*, --- F.3d ----, 2016 WL 1105363, at \*7 (10th Cir. Mar. 22, 2016) (concluding that certain organizations had not established standing "[a]bsent any testimony indicating . . . [they] intended to engage in conduct that might violate" the statute at issue). Notably, Defendants have *not* indicated that the federal prosecutors will not be subject to discipline for disobeying Rule 16-308(E). Thus, even in the absence of any actual enforcement action, Rule 16-308(E) creates a sufficiently credible threat of prosecution to confer standing upon the United States.

### ii

Defendants base their self-inflicted-injury argument on *Clapper v. Amnesty International USA*; however, their reliance on this case is misguided. There, the Supreme Court held that precautions taken by the plaintiffs to avoid the interception of their communications under the Foreign Intelligence Surveillance Act of 1978 were self-inflicted, and did not establish standing, because the statute did "not regulate, constrain, or compel any action on [the plaintiffs'] part." *Clapper*, 133 S. Ct. at 1153. The Court emphasized that any injury to the plaintiffs rested on a "highly attenuated chain of possibilities"—*viz.*, that the government would (1) target specific individuals that the plaintiffs communicated with; (2) invoke its authority under the statutory provision at

20

issue; (3) obtain authorization for the interception from a judge; and (4) actually intercept communications involving the plaintiffs. *Id.* at 1148.

However, in reviewing its standing jurisprudence, the Court recognized that, in contrast, "reasonable efforts [taken] to avoid greater injuries" could be sufficient for standing if the plaintiffs "would be subject to [discipline] *but for* their decision to take preventative measures." *Id*. at 1153 (emphasis added) (discussing *Monsanto Co. v. Geerston Seed Farms*, 561 U.S. 139 (2010), *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000), and *Meese v. Keene*, 481 U.S. 465 (1987)). This scenario—where standing could be found—which *Clapper* used to distinguish the circumstances before it, is actually akin to the scenario of the present case. Thus, far from aiding Defendants, *Clapper* reinforces the view that where federal prosecutors licensed in New Mexico take precautions that significantly hinder them from carrying out their lawful responsibilities to investigate and prosecute crimes, in order to avoid possible disciplinary investigations and sanctions from state ethics officials, then the United States has suffered a cognizable injury for standing purposes.

Lastly, in placing another spin on their self-inflicted injury argument against standing, Defendants draw our attention to the fact that federal attorneys can practice before the District Court for the District of New Mexico without being licensed in New Mexico. In other words, they point out that the United States Attorney could hire only attorneys without New Mexico law licenses as prosecutors in the District of New Mexico office, or those seeking to be federal prosecutors in that office could forego a New

21

Mexico law licenses in favor of bar membership in another, less restrictive jurisdiction. In view of these alternatives, Defendants argue that the individual choices of federal prosecutors or would-be federal prosecutors to hold New Mexico law licenses—and thus subject themselves to Rule 16-308(E)—amounts to a self-inflicted injury, and not a harm occasioned by, or fairly traceable to, Defendants' conduct relative to Rule 16-308(E).

Defendants' position, however, is unconvincing because it is an injury in itself to avoid lawful conduct—*viz.*, obtaining a New Mexico law license—in order to avoid the application of an allegedly unlawful Rule. *See Meese*, 481 U.S. at 475 (explaining that "the need to take . . . affirmative steps to avoid the risk of harm . . . constitutes a cognizable injury"); *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1177 (10th Cir. 2009) (concluding that the plaintiffs "suffered actual injuries because they were forced to move from Denver to avoid the reach of the [arguably unlawful] Ordinance"). Accordingly, we reject this iteration of Defendants' self-inflicted injury argument.

**iii**

Twenty years ago, we stated that "federal prosecutors need not risk disbarment by violating the Colorado Rules in order to challenge those rules in federal court." *Colorado Supreme Court I*, 87 F.3d at 1167. Defendants do not persuade us that we should adopt a different position with respect to New Mexico Rule 16-308(E). At both the pleadings and summary-judgment stages of this litigation, the United States has adequately articulated its alleged injury. That injury—e.g., the issuance of fewer attorney subpoenas, resulting in a reduction in otherwise available evidence for law enforcement purposes—is not

22

based on an attenuated alignment of a variety of events. Rather, it stems from, and is traceable to, the higher and conflicting standards imposed by Rule 16-308(E), which restrict federal prosecutors' issuance of attorney subpoenas. And the relevant state authorities have not disavowed an intention to sanction federal prosecutors who run afoul of these standards. In other words, the United States plainly faces a cognizable injury, traceable to Rule 16-308(E),[7] and we conclude that it has standing to challenge Rule 16-308(E).

## 2

The "[r]ipeness doctrine addresses a *timing* question: *when* in time is it appropriate for a court to take up the asserted claim." *Kan. Judicial Review*, 519 F.3d at 1116 (alteration in original) (quoting *ACORN v. City of Tulsa*, 835 F.2d 735, 738 (10th Cir. 1987)). "Ripeness reflects constitutional considerations that implicate Article III limitations on judicial power, as well as prudential reasons for refusing to exercise jurisdiction." *Awad*, 670 F.3d at 1124 (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 670 n.2 (2010)). The requirements of standing and constitutional ripeness overlap; if an injury "is sufficiently 'imminent' to establish standing, the constitutional requirements of the ripeness doctrine will necessarily be satisfied." *Id.* (quoting *ACLU v. Johnson*, 194 F.3d 1149, 1155 (10th Cir. 1999)); *see also Susan B.*

---

[7]On this point, Defendants again argue that *Clapper* governs this analysis, and squarely defeats the United States's claim of Article III standing. Nevertheless, we find Defendants' reliance upon *Clapper* misplaced for the reasons set forth *supra*.

23

*Anthony List v. Driehaus*, --- U.S.----, 134 S. Ct. 2334, 2341 n.5 (2014). The prudential requirements, however, turn on "both the 'fitness of the issues for judicial decision' and the 'hardship to the parties of withholding court consideration.'" *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)); *accord United States v. Vaquera-Juanes*, 638 F.3d 734, 737 (10th Cir. 2011).

Defendants invoke prudential considerations, challenging only the fitness of the preemption claim for judicial review. They argue that, in the absence of a pending state enforcement action, the United States's complaint rests on "an abundance of uncertain or contingent future events," including the issuance of a subpoena that violates Rule 16-308(E) and the filing of a disciplinary complaint against the issuing prosecutor. Aplts.' Opening Br. at 31–32. Yet these contingencies would only be relevant if waiting for them to play out would "significantly advance our ability to deal with the legal issues presented [ ]or aid us in their resolution." *Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 82 (1978); *accord Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 812 (2003). But waiting would not have this effect.

While Defendants assert that the preemption claim remains "too abstract and theoretical" in the absence of a specific investigation, Aplts.' Opening Br. at 33, in reality, the claim turns on whether Rule 16-308(E) is an ethics rule permitted by the McDade Act and, if so, whether it nonetheless conflicts with federal law governing prosecutors' subpoena practices before federal grand juries and federal district courts.

24

These questions are matters of law that can be resolved without further factual development. *See Colorado Supreme Court II*, 189 F.3d at 1284 (noting that "this appeal . . . presents purely legal questions"); *accord Stern*, 214 F.3d at 10 ("The issue presented can be finally resolved by declaratory judgment, its contours are sharply defined, and additional facts will not affect its resolution."); *see also Awad*, 670 F.3d at 1124 ("[O]n fitness, we 'focus[ ] on whether determination of the merits turns upon strictly legal issues or requires facts that may not yet be sufficiently developed.'" (second alteration in original) (quoting *Stout*, 519 F.3d at 1118)).

Indeed, several courts—including our own—have resolved challenges to similar state attorney-subpoena rules in the absence of specific applications, suggesting that the United States's claim here is fit for judicial resolution. *See Stern*, 214 F.3d at 9; *Colorado Supreme Court II*, 189 F.3d at 1284; *Whitehouse*, 53 F.3d at 1353–54; *Baylson*, 975 F.2d at 105. Thus, because the question presented in this appeal—*viz.*, whether the challenged provisions of Rule 16-308(E) are preempted by federal law—would not be "better grasped when viewed in light of a particular application," *Texas v. United States*, 523 U.S. 296, 301 (1998), we consider it ripe for judicial review.

**B**

Having determined that the district court's subject-matter jurisdiction over this case was sound, we turn now to Defendants' claim that the court committed reversible error by denying their Federal Rule of Civil Procedure 56(d) motion to stay its ruling on summary judgment pending the completion of discovery.

25

We review the denial of a Rule 56(d) motion for an abuse of discretion—a standard that "implies a degree of '[d]iscretion invested in judges [to render] a decision based upon what is fair in the circumstances and guided by the rules and principles of law.'" *Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1096 (10th Cir. 2010) (alterations in original) (quoting *In re Bueno*, 248 B.R. 581, 582 (Bankr. D. Colo. 2000)). As such, even though the general rule is that summary judgment should not be entered "where the nonmoving party has not had the opportunity to discover information that is essential to his opposition," *Price ex. rel. Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)), we will not reverse a ruling denying discovery unless it "exceed[s] the bounds of the rationally available choices given the facts and the applicable law in the case at hand," *FDIC v. Arciero*, 741 F.3d 1111, 1116 (10th Cir. 2013) (quoting *Valley Forge Ins. Co.*, 616 F.3d at 1096).

Here, the district court denied the Rule 56(d) motion because it concluded that the case would turn on "whether or not Rule 16-308(E) is an ethical rule or a substantive rule," such that "the wording of the rule itself, not factual circumstances surrounding the enactment or enforcement of the rule" would be determinative. Aplts.' App. at 261. This observation is consistent with our prior conclusion that the issue of whether federal law preempts a state attorney-subpoena rule "presents purely legal questions." *Colorado Supreme Court II*, 189 F.3d at 1284; *see also Stern*, 214 F.3d at 10 (concluding that the issue of an attorney-subpoena rule's validity was "sharply defined, and additional facts

26

w[ould] not affect its resolution").[8]  Indeed, much of the district court's order is devoted to discussing relevant decisions from other circuits addressing preemption claims involving similar state attorney-subpoena rules, and ultimately "[w]ith the guidance of the . . . cited precedent, the [c]ourt f[ound] that Rule 16-308(E), as applied to grand jury proceedings, violate[d] the Supremacy Clause."  Aplts.' App. at 322.

The facts as to which Defendants sought discovery—including whether Rule 16-308(E) actually causes delay and whether there have been any disciplinary

[8]  Defendants place much stock in the Fourth Circuit's decision in *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*, 721 F.3d 264 (4th Cir. 2013) (en banc).  That case—which is from another circuit—is of course not binding on us.  Moreover, its holding appears to be rooted in the Fourth Circuit's understanding of the unique requirements of First Amendment claims.  Specifically, the Fourth Circuit reversed there a district court's determination that discovery was not necessary to resolve as-applied and facial First Amendment claims: as the court saw it, "[i]n the First Amendment context," it was necessary for the city defendant to have information about how the challenged ordinance affected the plaintiff pregnancy center in order to defend an as-applied challenge, and, in order to make its case to the district court as to the facial attack, the city needed information "concerning the distinctive characteristics of Baltimore's various limited-service pregnancy centers."  721 F.3d at 282.  In contrast, in a preemption case like this one, the inquiry is almost entirely a legal one.  *See, e.g.*, *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983) ("The question of preemption is predominantly legal . . . .");  *H & R Block E. Enters. v. Raskin*, 591 F.3d 718, 723 (4th Cir. 2010) (describing the conflict-preemption analysis as "a two-step process of first ascertaining the construction of the two statutes and then determining the constitutional question [of] whether they are in conflict" (alteration in original) (quoting *Chi. & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 317 (1981)));  *see also Sec. Indus. Ass'n v. Connolly*, 883 F.2d 1114, 1125 n.10 (1st Cir. 1989) (concluding that a Rule 56(d) motion seeking to delay summary judgment in order to assess the impact of a challenged regulation on investors and brokers was "beside the point" because it was not directed at the determinative legal question of whether the regulation was preempted).  Accordingly, we believe Defendants' reliance on *Greater Baltimore Center for Pregnancy Concerns* is misplaced.

proceedings—were not "*essential* to [their] opposition." *Price*, 232 F.3d at 783 (emphasis added). These facts, even if established, would not have affected the district court's central legal conclusion—notably, that Rule 16-308(E) creates a higher and conflicting standard for attorney subpoenas in the federal grand-jury context, and thus impermissibly limits the types of subpoenas prosecutors may issue. As such, the court did not abuse its discretion in denying Defendants' Rule 56(d) motion. *See CenTra, Inc. v. Estrin*, 538 F.3d 402, 420 (6th Cir. 2008) ("[W]e have affirmed the denial of Rule 56[(d)] motions . . . if 'further discovery would not have changed the legal and factual deficiencies.'" (quoting *Maki v. Laakko*, 88 F.3d 361, 367 (6th Cir. 1996))).

## C

Turning to the central dispute in this case, the United States argues that Rule 16-308(E)—more specifically, subsections (E)(2) and (E)(3), the essentiality and no-other-feasible-alternative requirements—are preempted under the Supremacy Clause of the U.S. Constitution with respect to federal prosecutors' subpoena practices before grand juries and in other criminal proceedings. *See* U.S. Const., art. VI, § 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . ."). Conversely, Defendants argue that the rule is not preempted in either context.[9] The district court granted partial summary judgment to the

_____

[9] After oral argument, Defendants submitted a letter, pursuant to Federal Rule of Appellate Procedure 28(j), notifying this court of the Supreme Court's recent decision in *Armstrong v. Exceptional Child Ctr., Inc.*, --- U.S. ----, 135 S. Ct. 1378 (2015), which Defendants argue bars at the threshold the United States's preemption claim. We

28

United States, finding that the rule was preempted when applied to federal prosecutors' subpoena practice before grand juries because it conflicted with certain governmental interests—e.g., preserving grand-jury secrecy and affording grand juries wide latitude to investigate. However, outside of the realm of grand juries, the district court concluded that it was bound by *Colorado Supreme Court II*, in which we held that an identical Colorado ethics rule was not preempted by federal law governing prosecutors practicing in other criminal proceedings before federal district courts.

"We review the district court's grant of partial summary judgment *de novo*, applying the same legal standards as the district court." *Qwest Corp. v. AT & T Corp.*,

---

disagree. The Court in *Armstrong* held that there is no private right of action under the Supremacy Clause. 135 S. Ct. at 1384. The Court held that, in enacting the Medicaid statute at issue, Congress intended to foreclose such private equitable relief by creating broad "judicially unadministrable" standards and explicitly providing a nonjudicial means of enforcement—i.e., the withholding of Medicaid funds. *Id.* at 1385. However, in contrast, nothing in the structure or terms of the McDade Act similarly suggests that Congress sought to override the federal courts' equitable authority to entertain the United States's suit for injunctive relief on preemption grounds. Specifically, the McDade Act's directive is relatively straightforward—attorneys for the federal government are subject to a state's ethics rules to the same extent as attorneys licensed in those states—and the statute provides no alternative means of enforcement. Furthermore, the *Armstrong* Court emphasized that allowing *private* enforcement of the Supremacy Clause would "mak[e] it impossible to leave the enforcement of federal law to federal actors." *Id.* at 1384. This, it noted, would be inconsistent with the "discretion" the Constitution affords Congress "over the manner of implementing its enumerated powers." *Id.* at 1383–84. To the extent that *Armstrong*'s Supremacy Clause holding is motivated by the desire to preserve the federal government's "ability to guide the implementation of federal law," *id.* at 1384, this counsels in favor of—not against—permitting the United States to invoke preemption in order to protect its interest in the use of attorney subpoenas in federal prosecutions. *See Wyandotte Transp. Co. v. United States*, 389 U.S. 191, 201 (1967) (noting "the general rule that the United States may sue to protect its interests"). Thus, in our view, Defendants' reliance on *Armstrong* is misguided.

479 F.3d 1206, 1209 (10th Cir. 2007). "Where, as here, we are presented with cross-motions for summary judgment, we 'must view each motion separately,' in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor." *Manganella v. Evanston Ins. Co.*, 702 F.3d 68, 72 (1st Cir. 2012) (quoting *OneBeacon Am. Ins. Co. v. Commercial Union Assurance Co. of Can.*, 684 F.3d 237, 241 (1st Cir. 2012)); *see also Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007) ("Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." (quoting *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979))).

## 1

We begin by inquiring into the nature of the United States's "claim and the relief that would follow." *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010); *see Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 248 (2010) ("Our first task in resolving this question is to determine the contours of Milavetz's claim."); *accord United States v. Carel*, 668 F.3d 1211, 1217 (10th Cir. 2011). This subject is an important one, and the parties' arguments evince considerable uncertainty and disagreement regarding it.

In *Carel*, we succinctly described the two relevant analytical constructs:

> An appellant may challenge the constitutionality of a statute by asserting a facial challenge, an as-applied challenge, or both. "A facial challenge is a head-on attack [on a] legislative judgment, an assertion that the challenged statute violates the Constitution in all, or virtually all, of its applications." *United States v. Pruitt*, 502 F.3d 1154, 1171 (10th Cir. 2007).

30

In contrast, "[a]n as-applied challenge concedes that the statute may be constitutional in many of its applications, but contends that it is not so under the *particular circumstances* of the case." *Id.* (emphasis added); *see also N.M. Youth Organized v. Herrera*, 611 F.3d 669, 677 n.5 (10th Cir. 2010) ("[An] 'as-applied' challenge to a law acknowledges that the law may have some potential constitutionally permissible applications, but argues that the law is not constitutional as applied to [particular parties].").

*Carel*, 668 F.3d at 1217 (alterations in original) (citation omitted).[10]

As the Supreme Court has recognized, however, "the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010); *see Reed*, 561 U.S. at 194 (noting as to the parties's disagreement regarding whether the claim at issue "is properly viewed as a facial or as-applied challenge," that "[t]he label is not what matters"); *see also Ctr. for Indiv. Freedom v. Madigan*, 697 F.3d 464, 475 (7th Cir. 2012) ("[F]acial challenges and as-applied challenges can overlap conceptually."); Richard H. Fallon, Jr., *As-Applied and Facial Challenges and Third-Party Standing*, 113 HARV. L. REV. 1321, 1336 (2000) ("Facial challenges are not sharply categorically distinct from as-applied challenges to the validity of statutes."). In other words, "facial" and "as-applied" are not necessarily antipodal rubrics.

---

[10] We do not have the benefit of an agreement among the parties regarding the nature of the constitutional challenge (i.e., facial or as-applied), like we did in *Carel*. *See* 668 F.3d at 1217 (noting that "at oral argument [defense] counsel stated that his challenge . . . is an as-applied challenge" and "Counsel for the Government agreed").

Indeed, "the line between facial and as-applied relief is a fluid one, and many constitutional challenges may occupy an intermediate position on the spectrum between purely as-applied relief and complete facial invalidation." *Am. Fed'n of State, Cty. & Mun. Emps. Council 79 v. Scott*, 717 F.3d 851, 865 (11th Cir. 2013); *see Showtime Entm't, LLC v. Town of Mendon*, 769 F.3d 61, 70 (1st Cir. 2014) ("[T]his case highlights the sometimes nebulous nature of the distinction between facial and as-applied challenges, for Showtime's challenge does not fit neatly within our traditional concept of either type of claim."). This proposition is especially relevant here. The United States's claim "obviously has characteristics of both" a facial and as-applied claim. *Reed*, 561 U.S. at 194; *see Carel*, 668 F.3d at 1217 ("Mr. Carel's claim that [42 U.S.C.] § 16913 is unconstitutional has characteristics of both a facial and as-applied challenge."); *see also Catholic Leadership Coal. of Tex. v. Reisman*, 764 F.3d 409, 426 (5th Cir. 2014) (noting that "the precise boundaries of facial and as-applied challenges are somewhat elusive—certain challenges can have characteristics of both").

The United States contends that Rule 16-308(E) "impermissibly imposes procedural and substantive requirements on federal prosecutors [licensed in New Mexico] that are inconsistent with federal law and therefore violates the Supremacy Clause." Aplee.'s/Cross-Aplt.'s Br. ("U.S. Response Br.") at 7; *see* Aplts.' App. at 7 ("As applied to federal prosecutors, New Mexico Rule of Professional Conduct 16-308(E) . . . violates the Supremacy Clause . . . ."). Its "claim is 'as applied' in the sense that it does not seek to strike the [New Mexico rule] in all its applications, but only to the extent it covers

32

[federal prosecutors licensed to practice law in New Mexico].  The claim is 'facial' in that it is not limited to [a] particular case [i.e., a particular federal prosecutor's issuance of a specific attorney subpoena], but challenges application of the law more broadly to all [attorney subpoenas issued by all federal prosecutors licensed in New Mexico]." *Reed*, 561 U.S. at 194.

Put another way, the United States's claim has characteristics of a facial challenge because it attacks on purely legal grounds—i.e., under the Supremacy Clause—certain provisions of Rule 16-308(E) and contends that they are per se invalid.  In this regard, the claim does not relate to the circumstances of any particular attorney subpoena or any particular trial or grand-jury investigation.  But the claim also has characteristics of an as-applied challenge because it focuses solely on the constitutional ramifications of Rule 16-308(E)'s challenged provisions as they apply to a specific, narrowly defined group—federal prosecutors licensed in New Mexico; it does not seek a determination that the rule is invalid as applied to any other category of prosecutors (e.g., state or local prosecutors), and thus not all applications of the challenged provisions are encompassed by the claim.

The unique duality of the United States's preemption claim has engendered disagreement among the parties, and also some uncertainty—notably, by the claim's proponent, the United States—regarding how to properly characterize it.  The United States has emphasized in litigating the jurisdictional, prudential justiciability, and discovery issues that the claim is "facial"; in so doing, it has sought to underscore the

33

legal nature of the claim.[11] *See, e.g.*, Aplts.' App. at 116 (Pl.'s Opp. to Defs.' Mot. to

Dismiss, filed Sept. 20, 2013) (stating in opposing Defendants' motion to dismiss on

standing and ripeness grounds that the "case is a *facial* challenge to the constitutionality

of Rule 16-308(E), on grounds that the Rule invades a field completely occupied by

federal regulation and conflicts with federal law" (emphasis added)); *id.* at 265 (Pl.'s

(Am.) Combined Opp. to Defs.' Mot. for Summ. J. & Reply in Supp. Pl.'s Mot. for

Summ. J., filed Dec. 18, 2013) (citing the district court's "correct[ ]" holding "that this

matter is ripe for adjudication because facial challenges based upon preemption are fit for

review even without additional factual development or actual enforcement of the law").

But, in arguing the merits of the preemption claim, the United States has stressed

that it only seeks to invalidate Rule 16-308(E) as applied to a limited subset of

prosecutors—i.e., federal prosecutors licensed in New Mexico. *See id.* at 20 (seeking a

declaration in its complaint that Rule 16-308(E) was "invalid, null, and void, *as applied*

*to* federal attorneys for otherwise lawful actions" (emphasis added)); *id.* at 33 (Mem. in

Supp. of Pl.'s Mot. for Summ. J., filed June 28, 2013) ("If applied to federal prosecutors,

the Rule violates the Supremacy Clause of the United States Constitution[.] . . . Rule

---

[11] The response of the United States's counsel to questioning during oral argument regarding its use of the labels "facial" and "as-applied" bespeaks some of the uncertainty noted above and also specifically sheds light on the United States's intent behind the use of the label "facial." Counsel stated that perhaps the United States "used the wrong term in district court . . . because facial challenge is a term of art . . . . [W]hat we meant by that . . . is facial in the sense of this is a purely legal determination based on Supremacy Clause principles . . . . What we meant was this is a straight legal challenge . . . ." Oral Argument at 25:40–27:20.

34

16-308(E) is therefore void as applied to federal prosecutors."); *id.* at 49 ("[A]s applied to federal attorneys, Rule 16-308(E) . . . . is not in fact an 'ethical' rule, and is invalid as applied to federal attorneys[.] . . .").

Perhaps not surprisingly, the language of the district court's orders reflects the duality of the claim, and it also uses the labels "facial" and "as-applied" in a manner that approximates the United States's (i.e., the plaintiff's) framing of its case. In its decision denying New Mexico's motion to dismiss for lack of standing and ripeness, for example, the district court described the action as "facially challenging the New Mexico Rule . . . as it applies to federal prosecutors." *Id.* at 143. The court emphasized what it understood to be the facial nature of the challenge. *See, e.g.*, *id.* at 151 ("The overwhelming majority of courts hold that cases involving facial challenges based upon preemption are fit for judicial review even without specific factual development."). In denying Defendants further discovery, the court again held that "facial preemption challenges can be decided even in the absence of a detailed factual record. . . . The determination [of whether Rule 16-308(E) is preempted] is based upon the wording of the rule itself, not factual circumstances surrounding the enactment or enforcement of the rule." *Id.* at 260–61 (Order Den. Pl.'s Mot. to Stay Briefing & Defs.' 56(D) Req. for Extension, filed Nov. 27, 2013). Finally, in its order granting partial summary judgment to both parties, though the court noted that it was addressing a "facial[ ] challeng[e]" to Rule 16-308(E), it also explicitly recognized that the United States sought to declare the rule invalid only "as it applies to federal prosecutors." *Id.* at 306 (Mem. Op. & Order

35

Granting Partial Summ. J., filed Feb. 3, 2014); *see also id.* at 306 n.2 ("The Court assumes that Plaintiff only intended to bring this suit on behalf of federal prosecutors . . . .").

**2**

The unique duality of the United States's preemption claim gives rise to an issue that we must address before resolving the merits: whether the United States is judicially estopped from relying on its version of an "as-applied" argument in attacking on appeal the substantive validity of Rule 16-308(E), given its heavy reliance on "facial" arguments before the district court and the court's acceptance of such arguments. More specifically, Defendants contend that the United States should be judicially estopped on appeal from "switch[ing] to an as-applied challenge for purposes of avoiding the more stringent requirements for prevailing on the merits of a facial preemption challenge" after "[h]aving obtained the benefit of [ ] rulings from the district court based on a facial challenge." Aplts.'/Cross-Aplees.' Response and Reply Br. ("Aplts.' Reply Br.") at 19–20. They highlight a passage of the United States's appellate brief, wherein it states that "the United States challenges Rule 16-[3]08(E) only as-applied to federal prosecutors and only to those who seek to take 'otherwise lawful actions' prohibited by the New Mexico rule." U.S. Response Br. at 55 (quoting Aplts.' App. at 20). The United States goes on to argue that certain principles governing facial challenges that the Supreme Court has announced do not apply because of the limited scope of its claim. Specifically, it contends that they "would not apply because the United States is not challenging all of

36

the applications of the New Mexico Rule, but rather a limited set of applications." *Id.* at 56.

Thus, advocating for the application of facial standards, Defendants contend that the United States should be judicially estopped from making such an argument. For two salient, independent reasons, however, we reject this contention. Under the judicial-estoppel doctrine, "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)). While the circumstances that trigger judicial estoppel are "not reducible to any general formulation," *id.* at 750, "nevertheless[ ] the Supreme Court has identified three relevant factors," *BancInsure, Inc. v. FDIC*, 796 F.3d 1226, 1240 (10th Cir. 2015), *petition for cert. filed sub nom. McCaffree v. BancInsure*, 84 U.S.L.W. 3433 (U.S. Feb. 1, 2016) (No. 15-982). They are: (1) "a party's later position must be 'clearly inconsistent' with its earlier position"; (2) the party must have "succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or second court was misled'"; and (3) allowing the party to assert the inconsistent position would result in "an unfair advantage or [would] impose an unfair detriment on the opposing party." *New Hampshire*, 532 U.S. at 750–51 (citations omitted); *accord Vehicle Mkt. Research, Inc. v. Mitchell Int'l, Inc.*, 767 F.3d 987, 993 (10th Cir. 2014). "[J]udicial estoppel 'is an equitable doctrine invoked by a

37

court at its discretion.'" *New Hampshire*, 532 U.S. at 750 (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)); *accord Kaiser v. Bowlen*, 455 F.3d 1197, 1204 (10th Cir. 2006). "This circuit applies the doctrine of judicial estoppel 'both narrowly and cautiously.'" *BancInsure*, 796 F.3d at 1240 (quoting *Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1227 (10th Cir. 2011)). This is because the doctrine is "a powerful weapon to employ against a party seeking to vindicate its rights, and there are often lesser weapons that can keep alleged inconsistent statements in check." *Vehicle Mkt. Research, Inc.*, 767 F.3d at 993; *accord BancInsure*, 796 F.3d at 1240.

First, we reject Defendants' judicial-estoppel argument because the United States's legal arguments in the district court and on appeal are not clearly inconsistent; indeed, they are arguably not inconsistent at all. Our caselaw has set a high bar for estoppel proponents seeking to show that two positions are clearly inconsistent. *See, e.g.*, *Vehicle Mkt. Research*, 767 F.3d at 994–96; *Ellis v. Ark. La. Gas Co.*, 609 F.2d 436, 440 (10th Cir. 1979). And we find validation for our narrow and cautious approach in this regard, *see BancInsure*, 796 F.3d at 1240, in the decisions of our sister circuits. In the words of the Second Circuit, "If the statements can be reconciled there is no occasion to apply an estoppel." *Simon v. Safelite Glass Corp.*, 128 F.3d 68, 73 (2d. Cir. 1997) (applying judicial estoppel because plaintiff told the Social Security Administration that he was "unable to work," which was "patently and admittedly contrary to his central claim in this case that he is able to work"); *see United States v. Apple, Inc.*, 791 F.3d 290, 337 (2d Cir. 2015) (noting that its precedent has "emphasized the need to 'carefully consider the

38

contexts in which apparently contradictory statements are made to determine if there is, in fact, direct and irreconcilable contradiction'" and concluding that a party's "facially inconsistent" arguments were not clearly inconsistent because there was a factual basis in the record for distinguishing the arguments (quoting *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 119 (2d Cir. 2004))); *see also Lorillard Tobacco Co. v. Chester, Willcox & Saxbe, LLP*, 546 F.3d 752, 757–58 (6th Cir. 2008) (noting that the judicial-estoppel doctrine is applied cautiously and that "there is no inconsistency, and certainly no *clear* inconsistency" in the challenged arguments).

As we read it, the substance of the United States's arguments before the district court and on appeal are not clearly inconsistent. In both settings, the United States has presented a legal preemption challenge to the validity of provisions of Rule 16-308(E), as they apply to a limited subset of prosecutors—that is, federal prosecutors licensed in New Mexico. True, in emphasizing the legal nature of its challenge in litigating the jurisdictional, prudential justiciability, and discovery issues before the district court, it denominated its claim as "facial," whereas on appeal it seems to have avoided this label, but the substance of its argument on appeal is not clearly inconsistent with the argument it made below. *Compare, e.g.*, Aplts.' App. at 116–17 (in opposing Defendants' motion to dismiss on standing and ripeness grounds, stating that the "case is a *facial* challenge to the constitutionality of Rule 16-308(E)" and that "the complaint has alleged each way in which the Rule is at odds with federal law and therefore violates the Supremacy Clause"), *with* U.S. Response Br. at 18 ("The district court also correctly found that this case is ripe

39

for adjudication.  Its resolution requires no further factual development . . . .  The Supremacy Clause challenge here presents purely legal questions . . . .").  And, on appeal—as before the district court—the United States has emphasized that it only seeks to invalidate provisions of Rule 16-308(E) as applied to a limited subset of prosecutors—i.e., federal prosecutors.  *Compare, e.g.*, U.S. Response Br. at 55 (stating that "the United States challenges Rule 16-[3]08(E) only as-applied to federal prosecutors"), *with* Aplts.' App. at 49 ("[A]s applied to federal attorneys, Rule 16-308(E) . . . . is not in fact an 'ethical' rule, and is invalid as applied to federal attorneys . . . .").

Defendants' argument to the contrary elides the unique duality of the claim and operates on the assumption that the United States's challenge must be either "facial" or "as-applied"; under their reasoning, it *cannot* have characteristics of both.  As noted above, however, such an antipodal limitation is not required.  *See Reed*, 561 U.S. at 194 (noting that the claim at issue "obviously has characteristics of both" a facial and as-applied claim).  And, in fact, the United States's preemption claim has characteristics of both a "facial" and an "as-applied" challenge.  In sum, our first reason for rejecting Defendants' judicial-estoppel argument is because the United States's arguments in the district court and on appeal are not clearly inconsistent.

Our second reason is because any ostensible inconsistency would involve solely *legal* arguments; however, under our precedent, "the position to be estopped must generally be one of fact rather than of law or legal theory."  *Johnson v. Lindon City*

40

*Corp.*, 405 F.3d 1065, 1069 (10th Cir. 2005); *see also BancInsure*, 796 F.3d at 1240

("Notably, we have held that judicial estoppel only applies when the position to be

estopped is one of fact, not one of law."); *United States v. Villagrana-Flores*, 467 F.3d

1269, 1279 (10th Cir. 2006) ("Even if we were to agree that the government took two

clearly conflicting positions, . . . the existence of a Fourth Amendment violation is a legal

position, not a factual one, and therefore the first judicial estoppel factor has not been

satisfied."). It cannot be disputed that the facial and as-applied rubrics are legal in nature

and form the basis for legal arguments. Therefore, even if the United States has shifted

on appeal from the position it held in the district court regarding the nature of its

claim—*viz.*, from viewing it as facial to as-applied—that shift would be legal in nature.

Consequently, under our precedent, the judicial-estoppel doctrine would be inapposite.[12]

In sum, for these two salient, independent reasons, we reject Defendants' judicial-

estoppel contention.

**3**

Having concluded that the United States's argument with respect to its uniquely

dual preemption claim is not barred by the judicial-estoppel doctrine, we must still

---

[12] Of course, "lesser weapons," *Vehicle Mkt. Research*, 767 F.3d at 993, in the form of the doctrines of waiver or forfeiture might be employed in certain circumstances when a party changes its position on a legal issue on appeal, *see, e.g.*, *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1127–28 (10th Cir. 2011). However, Defendants have not sought to invoke either of these weapons in connection with the United States's purported change of position regarding the nature of its claim, and we decline to assay the matter *sua sponte*.

41

determine which analytical construct—facial or as-applied—is the appropriate one for purposes of conducting the substantive preemption analysis. The parties' arguments reflect disagreement on this point. Defendants vigorously contend that facial standards should govern the resolution of the United States's preemption claim; in particular, they advocate for the use of the rigorous no-set-of-circumstances test, which is perhaps most closely associated with the Supreme Court's decision in *United States v. Salerno*, 481 U.S. 739, 745 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."); *see also Cal. Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 588–89 (1987) ("In the present posture of this litigation, the Coastal Commission's identification of a possible set of permit conditions not pre-empted by federal law is sufficient to rebuff Granite Rock's facial challenge to the permit requirement."); *Reed*, 561 U.S. at 231 (Thomas, J., dissenting) (citing *Salerno*, and describing the no-set-of-circumstances test as "our most rigorous standard"); *see also* Aplts.' Opening Br. at 54–55 ("All that is required to defeat Plaintiff's *facial* challenge is the conclusion that Plaintiff has not met its burden of proving that Rule 16-308(E) necessarily and irreconcilably conflicts with federal grand jury practice in *all* instances"). The United States appears to generally resist application of a facial standard and, most notably, flatly rejects application of the *Salerno* standard, contending that it "would not apply because the United States is not challenging all of the applications of the New Mexico Rule, but rather a limited set of applications." U.S.

42

Response Br. at 56.

We conclude, under the parameters defined below, that the standards for a facial claim are appropriate here.

**a**

As noted, the United States's "claim is 'as applied' in the sense that it does not seek to strike the [Rule 16-308(E)] in all its applications, but only to the extent it covers [federal prosecutors licensed in New Mexico]. The claim is 'facial' in that it is not limited to [a] particular case [i.e., a particular federal prosecutor's issuance of a specific attorney subpoena], but challenges application of the law more broadly to all [attorney subpoenas issued by all federal prosecutors licensed in New Mexico]." *Reed*, 561 U.S. at 194. The Supreme Court's decision in *Reed* is instructive in discerning the appropriate legal standard for resolution of this case because there (as the First Circuit observed) the Court "faced a similar duality in the First Amendment Context." *Showtime Entm't*, 769 F.3d at 70.

The foundation for the lawsuit in *Reed* was the public-records statute ("PRA") of the State of Washington, which "authorize[d] private parties to obtain copies of government documents, and the State construe[d] the PRA to cover submitted referendum petitions." 561 U.S. at 191. The Court succinctly introduced the case's factual background, the legal issue, and its resolution of it:

> This case arises out of a state law extending certain benefits to same-sex couples, and a corresponding referendum petition to put that law to a popular vote. Respondent intervenors invoked the PRA to

43

obtain copies of the petition, with the names and addresses of the signers. Certain petition signers and the petition sponsor objected, arguing that such public disclosure would violate their rights under the First Amendment.

The course of this litigation, however, has framed the legal question before us more broadly. The issue at this stage of the case is not whether disclosure of this particular petition would violate the First Amendment, but whether disclosure of referendum petitions in general would do so. We conclude that such disclosure does not as a general matter violate the First Amendment, and we therefore affirm the judgment of the Court of Appeals. We leave it to the lower courts to consider in the first instance the signers' more focused claim concerning disclosure of the information on this particular petition, which is pending before the District Court.

*Id.*

In the claim at issue in *Reed*, the plaintiffs averred that the PRA "violates the First Amendment *as applied* to referendum petitions." *Id.* at 194 (emphasis added) (quoting Count I of the Complaint). As here, the parties jousted about whether the claim was "properly viewed as a facial or as-applied challenge." *Id.* The Court, however, recognized that facial and as-applied are not mutually exclusive or antipodal constructs, observing that the claim "obviously has characteristics of both." *Id.* Elaborating, the Court said:

The claim is "as applied" in the sense that it does not seek to strike the PRA in all its applications, but only to the extent it covers referendum petitions. The claim is "facial" in that it is not limited to plaintiffs' particular case, but challenges application of the law more broadly to all referendum petitions.

*Id.*

Critically for our purposes, the Court then offered guidance on how—in the

44

context of such duality—to determine which analytical construct is most apt for resolution of the underlying substantive claim. It began by observing that "[t]he label [i.e., facial or as-applied] is not what matters." *Id.* "The important point," it said, is whether the "plaintiffs' claim and the relief that would follow . . . reach beyond the particular circumstances of the[ ] plaintiffs." *Id.* The Court concluded that this was true in that case, where the plaintiffs sought in the claim at issue "an injunction barring the secretary of state 'from making referendum petitions available to the public,'" not just an injunction barring the public disclosure of the referendum petition involving them, relating to same-sex marriage. *Id.* (quoting Count I of the Complaint). As such, the Court concluded that, irrespective of the "label" that the plaintiffs attached to their claim, "[t]hey must therefore satisfy our standards for a facial challenge to the extent of that reach." *Id.*

We read *Reed* as offering three key lessons for discerning the appropriate analytical lens for conducting a substantive constitutional analysis—lessons that are applicable at least where the claims evince a duality as here: first, the labels the parties attach to claims are not determinative; second, in determining whether to apply facial standards to the claim, importantly, the court must focus on whether the claim and the relief therein extend beyond the plaintiffs' particular circumstances; and third, if the claim and relief do so, facial standards are applied but only to the universe of applications contemplated by plaintiffs' claim, not to all conceivable applications contemplated by the challenged provision. *See, e.g.*, *Showtime Entm't*, 769 F.3d at 70 (in holding that facial

standards apply, stating "[w]e understand the relief sought here to be the invalidation of the zoning bylaws, not merely a change in their application to Showtime[;] . . . . it is clear that this is a request that 'reach[es] beyond' the precise circumstances of Showtime's license application" (third alteration in original) (quoting *Reed*, 561 U.S. at 194)); *Catholic Leadership Coal.*, 764 F.3d at 426 ("[T]o categorize a challenge as facial or as-applied we look to see whether the 'claim and the relief that would follow . . . reach beyond the particular circumstances of the [ ] plaintiffs.' If so, regardless of how the challenge is labeled by a plaintiff, '[t]hey must therefore satisfy our standards for a facial challenge to the extent of that reach.'" (second and third alterations in original) (citation omitted) (quoting *Reed*, 561 U.S. at 194)); *Discount Tobacco City & Lottery, Inc. v. United States*, 674 F.3d 509, 522 (6th Cir. 2012) ("In this case, Plaintiffs label their claims as both facial and as-applied challenges to the Act, but because the 'plaintiffs' claim and the relief that would follow . . . reach beyond the particular circumstances of these plaintiffs,' the claims that are raised are properly reviewed as facial challenges to the Act." (quoting *Reed*, 561 U.S. at 194)); *see also Am. Fed'n of State, Cty. & Mun. Emps. Council 79*, 717 F.3d at 862 ("We look to the scope of the relief requested to determine whether a challenge is facial or as-applied in nature.").

Further explication may clarify the contours of the third lesson. As noted, a paradigmatic facial challenge is "a head-on attack [on a] legislative judgment, an assertion that the challenged statute violates the Constitution in all, or virtually all, of its applications." *Carel*, 668 F.3d at 1217 (quoting *Pruitt*, 502 F.3d at 1171). However,

where the claim at issue evinces the kind of duality at issue here—that is, reflects

characteristics of both facial and as-applied challenges—the facial analysis that *Reed*

envisions is more limited in scope than that employed for paradigmatic facial claims.[13]

Specifically, the analysis does not attempt to assay the constitutional validity of all or

virtually all of the applications of the challenged provision.  Instead, it focuses on only

the constitutional validity of the subset of applications targeted by the plaintiffs'

substantive claim.  Consequently, using the language of *Reed*, plaintiffs asserting such a

dual claim are obliged to "satisfy our standards for a facial challenge" but only "to the

extent of that [claim's] reach"—which means only insofar as the claim is actually facial

in character, in that it "reach[es] beyond the particular circumstances of the[ ] plaintiffs."

*Reed*, 561 U.S. at 194.

This third lesson was concretely displayed in *Reed*.  The Court concluded that the

facial standard should be applied to the plaintiffs' dual claim—a claim that, in part,

"obviously ha[d] characteristics of" a facial challenge, *id.*—because their claim attacked

the public records statute's disclosure requirements related to "referendum petitions in

general," not only the disclosure requirements as they applied to the particular

referendum petition at issue involving same-sex marriage, *id.* at 191.  Demonstrating the

third lesson, *Reed* only applied a facial analysis to the public records statute insofar as it

---

[13]  Indeed, one of our sister circuits has recognized that these dual claims are qualitatively distinct from paradigmatic facial claims by describing the former as "quasi-facial in nature."  *Am. Fed'n of State, Cty. & Mun. Emps.*, 717 F.3d at 863.

47

was construed to reach referendum petitions—not to the statute as a whole, which applied to other records as well. *See id.* at 194. In other words, *Reed* applied the facial analysis to the public records statute "to the extent [that the claim's] reach" went beyond the disclosure requirements related to the same-sex marriage referendum petitions to include referendum petitions generally—but, critically, no further than that. *See id.* Some of our sister circuits appear to have tacitly recognized and applied *Reed*'s third lesson. *See, e.g.*, *Showtime Entm't,* 769 F.3d at 70–71 (applying facial analysis to claim that extended beyond plaintiff's specific circumstances—that is, a license application—but extending it no further than the zoning ordinance impacting plaintiff and other adjacent landowners engaged in the same business); *Am. Fed'n of State, Cty. & Mun. Emps.*, 717 F.3d at 865 (in the context of a dual claim "conclud[ing] that the district court granted what effectively amounted to facial relief—or, at the very least, relief that had enough characteristics of facial relief to demand satisfaction" of facial standards, and proceeding to apply those standards only to the extent that the challenged executive order reached beyond the particular circumstances of the plaintiffs).

Guided by *Reed* and its three key lessons, we conclude that facial standards should be applied to the United States's preemption claim but only to the extent that the challenged provisions of Rule 16-308(E) impact federal prosecutors licensed in New Mexico and their attorney-subpoena practices. First, because labels are not important, the United States's use of as-applied verbiage in its complaint, *see* Aplts.' App. at 20 (seeking a declaration in its complaint that Rule 16-308(E) was "invalid, null, and void,

48

*as applied to* federal attorneys for otherwise lawful actions" (emphasis added)), should not deter us from determining whether facial standards actually provide the appropriate touchstone. *See Reed*, 561 U.S. at 194 (applying facial standards, though the count of the complaint at issue alleged that the PRA "violate[d] the First Amendment *as applied* to referendum petitions" (emphasis added) (quoting Count I of the Complaint)). Second, the United States's claim and its desired relief clearly extend beyond the particular circumstances of any particular federal prosecutor issuing an attorney subpoena. The United States has sought to bar enforcement of certain provisions of Rule 16-308(E) relative to all federal prosecutors licensed in New Mexico who issue attorney subpoenas—irrespective, for example, of the evidentiary needs of a particular grand-jury investigation. Accordingly, following *Reed*, we rightly apply facial standards to the resolution of the United States's claim. Finally, applying *Reed*'s third lesson, the facial analysis should extend to a preemption analysis of the challenged provisions Rule 16-308(E), but only insofar as they apply to federal prosecutors licensed in New Mexico who issue attorney subpoenas.[14] We turn now to determine whether *Salerno*'s no-set-of-circumstances language or some other rubric is the appropriate one to apply here.

---

[14] Indeed, although starting from different places, both parties appear to acknowledge that the relevant universe for analysis is this federal-prosecutor group. *Compare* Aplts.' Reply Br. at 3–4 ("Plaintiff must meet its burden to show that there is no set of circumstances under which Rule 16-308(E) could apply with respect to a prosecutor's conduct in issuing a federal grand subpoena to an attorney."), *with* U.S. Response Br. at 56 (noting that "the United States is not challenging all of the applications of the New Mexico Rule, but rather a limited set of applications" involving "federal prosecutors who issue grand jury subpoenas").

**b**

**i**

Defendants argue that, in order to meet the "standard[ ] for a facial challenge,"

Aplts.' Reply Br. at 51–52 (quoting *Reed*, 561 U.S. at 194), the United States must

demonstrate that "no set of circumstances exists under which [Rule 16-308(E)] would be

valid," *Salerno*, 481 U.S. at 745. As noted, the United States contends that *Salerno*'s

facial standards are inapplicable here.[15]

While both the Supreme Court and our court have questioned whether *Salerno*'s

no-set-of-circumstances language applies to all facial challenges, *see, e.g.*, *United States*

*v. Stevens*, 559 U.S. 460, 472 (2010); *Wash. State Grange v. Wash. State Republican*

*Party*, 552 U.S. 442, 449 (2008); *Doe v. City of Albuquerque*, 667 F.3d 1111, 1123 (10th

---

[15]     The United States's resistance to *Salerno*'s no-set-of-circumstances language appears to rest in part on a misunderstanding regarding the universe of possible applications (i.e., circumstances) that would be at issue under that formula as used here. In this regard, the United States says, "The *Salerno* standard would not apply because the United States is not challenging *all of the applications* of the New Mexico Rule, but rather a limited set of applications." U.S. Response Br. at 56 (emphasis added). However, as we noted *supra* in the immediately preceding section discussing the third lesson that we glean from *Reed*, facial standards may be applicable even when plaintiffs challenge only a limited subset of the conceivable applications of a challenged provision—*viz.*, if their claims evince the kind of duality or "quasi-facial" character at issue here, *Am. Fed'n of State, Cty. & Mun. Emps.*, 717 F.3d at 863 (noting that "*Salerno* also applies when a court grants relief that is quasi-facial in nature")—but only to the extent of the challenged subset. *See Reed*, 561 U.S. at 194. Indeed, Defendants do not maintain that the proffered *Salerno* no-set-of-circumstances test should extend beyond the attorney-subpoena practices of federal prosecutors licensed in New Mexico. In any event, for the reasons noted *infra*, we are content to assume that the *Salerno* no-set-of-circumstances language is controlling, and we apply it consistent with *Reed*'s third lesson and our precedent interpreting *Salerno*.

Cir. 2012); *Hernandez-Carrera v. Carlson*, 547 F.3d 1237, 1255 (10th Cir. 2008), the Supreme Court has previously applied this language in at least two preemption cases, *see Anderson v. Edwards*, 514 U.S. 143, 155 n.6 (1995); *Cal. Coastal Comm'n*, 480 U.S. at 593; *see also Villas at Parkside Partners v. City of Farmers Branch*, 726 F.3d 524, 564 (5th Cir. 2013) (applying *Salerno* to a facial preemption challenge). We thus are prepared to assume *arguendo* that *Salerno*'s no-set-of-circumstances language does apply here.

Even so, we have construed *Salerno*'s no-set-of-circumstances language "not as setting forth a *test* for facial challenges, but rather as describing the *result* of a facial challenge in which a statute fails to satisfy the appropriate constitutional standard." *Doe*, 667 F.3d at 1127; *see also* Marc E. Isserles, *Overcoming Overbreadth: Facial Challenges & the Valid Rule Requirement*, 48 AM. U. L. REV. 359, 386 (1998) ("*Salerno* is best understood, not as a facial challenge 'test' at all, but rather as a descriptive claim about a statute whose terms state an invalid rule of law . . . ."). A facial challenge is best understood as "a challenge to the terms of the statute, not hypothetical applications," *Doe*, 667 F.3d at 1127, and is resolved "simply by applying the relevant constitutional test to the challenged statute without attempting to conjure up whether or not there is a hypothetical situation in which application of the statute might be valid," *id.* at 1124; *see also City of Los Angeles v. Patel*, --- U.S. ----, 135 S. Ct. 2443, 2451 (2015) (stating that, in resolving a facial challenge, "the Court has considered only applications of the statute in which it actually authorizes or prohibits conduct," and not every hypothetical possibility); Fallon, *supra*, at 1328 ("In a practical sense, doctrinal tests of constitutional

51

validity can thus produce what are effectively facial challenges."). "In other words, where a statute fails the relevant constitutional test . . . it can no longer be constitutionally applied to anyone—and thus there is 'no set of circumstances' in which the statute would be valid." *Doe*, 667 F.3d at 1127.

## ii

In this case, the relevant constitutional test for assaying the facial validity of the challenged provisions of Rule 16-308(E) involves the preemption doctrine. The basic taxonomy of that doctrine—which is based on the Constitution's Supremacy Clause, U.S. Const. art. VI, § 2—is well-established: "Put simply, federal law preempts contrary state law." *Hughes v. Talen Energy Mktg., LLC*, --- U.S. ----, 136 S. Ct. 1288, 1297 (2016); *see, e.g.*, *Arizona v. United States*, --- U.S. ----, 132 S. Ct. 2492, 2500–01 (2012); *U.S. Airways, Inc. v. O'Donnell*, 627 F.3d 1318, 1324 (10th Cir. 2010). More specifically, among the "three types of preemption," *U.S. Airways*, 627 F.3d at 1324, the one relevant here is called conflict preemption.[16] In that species of preemption, a state-law provision

---

[16]     The other two are called express preemption and field preemption. *See, e.g.*, *English v. Gen. Elec. Co.*, 496 U.S. 72, 79–80 (1990) (noting, as to express preemption, that "Congress can define explicitly the extent to which its enactments pre-empt state law"; and, as to field preemption, that "state law is pre-empted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively"); *see also U.S. Airways*, 627 F.3d at 1324 (stating, in enumerating the two others, that "1) 'express preemption, which occurs when the language of the federal statute reveals an express congressional intent to preempt state law;' [and] 2) 'field preemption, which occurs when the federal scheme of regulation is so pervasive that Congress must have intended to leave no room for a State to supplement it . . . .'" (quoting *Mount Olivet Cemetery Ass'n v. Salt Lake City*, 164 F.3d 480, 486 (10th Cir. 1998))). *But cf. Hughes*, 136 S. Ct. at 1300 (Sotomayor, J., concurring) (noting the

will be preempted if it conflicts with federal law, either because (1) "compliance with both federal and state regulations is a physical impossibility," *Arizona*, 132 S. Ct. at 2501 (quoting *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43 (1963)), or because the provision (2) "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of" federal law, *id.* (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)); *accord Sprietsma v. Mercury Marine*, 537 U.S. 51, 64–65 (2002); *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372–73 (2000); *Skull Valley Band of Goshute Indians v. Nielson (Skull Valley)*, 376 F.3d 1223, 1240 (10th Cir. 2004); *see also* Richard H. Fallon, Jr., et al., HART AND WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM 646 (6th ed. 2009) ("Conflict preemption . . . embraces two distinct situations. In the easier but far rarer case, compliance with both federal and state duties is simply impossible. In the second and more common situation, compliance with both laws is possible, yet state law poses an obstacle to the achievement of federal purposes." (citation omitted)).[17]

Generally speaking, "[t]here is no federal pre-emption *in vacuo*, without a

Court's "general exhortation not to rely on talismanic pre-emption vocabulary").

[17]    Conflict preemption is a form of implied preemption. *See, e.g.*, *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992) (noting the Court's historical recognition of "at least two types of implied pre-emption," that is, "field pre-emption" and "conflict pre-emption"); *Chamber of Commerce v. Edmondson*, 594 F.3d 742, 765 (10th Cir. 2010) (noting that "state laws may be impliedly preempted either as a result of conflict or field preemption"); *Choate v. Champion Home Builders Co.*, 222 F.3d 788, 795 (10th Cir. 2000) ("Implied preemption exists when (1) state law regulates conduct in a field Congress intended the Federal Government to occupy exclusively, or (2) when state law actually conflicts with federal law.").

53

constitutional text or a federal statute to assert it." *P.R. Dep't of Consumer Affairs v. Isla Petroleum Corp.*, 485 U.S. 495, 503 (1988).[18]  Frequently, courts are called upon to discern the preemptive effect of the latter—federal statutes (as well as regulations promulgated under them).  *See, e.g.*, *Crosby*, 530 U.S. at 363, 373, 374 n.8 (noting that "[w]e find that the state law undermines the intended purpose and 'natural effect' of at least three provisions of the federal Act" and "declin[ing] . . . to pass on the First Circuit's rulings addressing the foreign affairs power and the dormant Foreign Commerce Clause"); *Choate v. Champion Home Builders Co.*, 222 F.3d 788, 791–92 (10th Cir. 2000) ("Congress has the power to preempt state law under . . . the Supremacy Clause. '[A]n agency's preemption regulations, promulgated pursuant to Congressional authority,

---

[18]      In certain limited settings involving federal interests, the Supreme Court has recognized that federal common law—absent an operative constitutional or congressional text—may still preempt state law.  *See Boyle v. United Tech. Corp.*, 487 U.S. 500, 504 (1988) ("[W]e have held that a few areas, involving 'uniquely federal interests,' are so committed by the Constitution and laws of the United States to federal control that state law is pre-empted and replaced, where necessary, by federal law of a content prescribed (absent explicit statutory directive) by the courts—so-called 'federal common law.'" (citation omitted) (quoting *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640 (1981))); *see also Helfrich v. Blue Cross and Blue Shield Ass'n*, 804 F.3d 1090, 1098 (10th Cir. 2015) ("In our view, the analysis in *Boyle* requires the displacement of the Kansas antisubrogation regulation in the context of the Blue Cross claim against Ms. Helfrich."); *N.J. Retail Merch. Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 392 (3d Cir. 2012) ("It is undisputed that state law can be preempted by federal common law as well as federal statutes.").  This doctrine of federal common law preemption is not at issue here.  In particular, as explicated *infra*, as to the primary contested issue of substance in this case—whether Rule 16-308(E)'s challenged provisions are preempted as applied to federal prosecutors in the grand jury context—we predicate our preemption holding on the text of the Grand Jury Clause of the Fifth Amendment of the Constitution, as interpreted by the Supreme Court, not on federal common law.

have the same preemptive effect as statutes.'" (footnote omitted) (citation omitted) (quoting *Meyer v. Conlon*, 162 F.3d 1264, 1268 (10th Cir. 1998))); *Skull Valley*, 376 F.3d at 1240 ("[I]n order to determine whether the Utah statutes at issue are preempted, we must examine the federal statutes regulating nuclear power."); *see also Emerson v. Kansas City S. Ry. Co.*, 503 F.3d 1126, 1127 (10th Cir. 2007) ("This case concerns the preemptive scope of the Interstate Commerce Commission Termination Act of 1995 (ICCTA).").

However, as most relevant here, the constitutional text itself may displace conflicting state law. *See Chy Lung v. Freeman*, 92 U.S. 275, 281 (1875) ("In any view which we can take of this [California] statute, it is in conflict with the Constitution of the United States, and therefore void.); *Nat'l Foreign Trade Council v. Natsios*, 181 F.3d 38, 49–50 (1st Cir. 1999) (proceeding from the premise that "[t]he Constitution's foreign affairs provisions have been long understood to stand for the principle that power over foreign affairs is vested exclusively in the federal government," in holding that the state law at issue was preempted under "the federal foreign affairs power as interpreted by the Supreme Court"), *aff'd on other grounds sub nom. Crosby*, 530 U.S. at 373, 374 & n.8. *Compare DeCanas v. Bica*, 424 U.S. 351, 355 (1976) (considering the possibility that "the Constitution of its own force" may preempt state law), *superseded by statute on other grounds as recognized by Chamber of Commerce v. Whiting*, 563 U.S. 582, 590 (2011), *with Keller v. City of Fremont*, 719 F.3d 931, 940 (8th Cir. 2013) ("In [*De Canas*,] the Supreme Court addressed the extent to which the Constitution preempts

55

state and local laws . . . ."). In engaging in our preemption inquiry, we focus on "the terms of [Rule 16-308(E)], not hypothetical applications." *See Doe*, 667 F.3d at 1127; *cf. Green Mountain R.R. Corp. v. Vermont*, 404 F.3d 638, 644 (2d Cir. 2005) ("[W]hat is preempted here is the permitting process itself, not the length or outcome of that process *in particular cases*." (emphasis added)).[19]

**4**

Having given content to the standards for the facial challenge at play here, we now proceed to apply the preemption test to the terms of the challenged provisions of Rule 16-308(E). Our analysis is guided by our reasoning in *Colorado Supreme Court II*, where we considered the constitutionality of an identical attorney-subpoena rule. *See* 189 F.3d at 1283 n.2. In resolving the preemption claim in that case, we framed the inquiry as follows: "whether [the rule] violates the Supremacy Clause . . . turns on whether the rule is a rule of professional ethics clearly covered by the McDade Act, or a substantive or procedural rule that is inconsistent with federal law." *Id.* at 1284. Even though we determined that the rule was an ethics rule, we nevertheless examined whether this ethics rule was otherwise "inconsistent with federal law" and thus preempted. *Id.* at 1289. We

---

[19]     This approach of applying the preemption doctrine to the terms of Rule 16-308(E) rather than speculating about potential valid applications accords with how other circuit panels—including a panel of our own in *Colorado Supreme Court II*—have addressed preemption challenges to state ethics rules. *See, e.g.*, *Stern*, 214 F.3d at 20–21; *Colorado Supreme Court II*, 189 F.3d at 1288–89; *Baylson*, 975 F.2d at 111–12.

apply this analytical framework to the challenged provisions of Rule 16-308(E).[20]

**a**

The McDade Act explicitly subjects federal attorneys "to State laws and

rules . . . governing attorneys in each State . . . to the same extent and in the same manner

---

[20] Our esteemed colleague in dissent contends that our examination in *Colorado Supreme Court II* of whether Colorado's Rule 3.8—which we had determined was an ethics rule—was "inconsistent with federal law," 189 F.3d at 1289, was "a brief aside at the end of the opinion," Dissent at 7, without decisional significance. In this vein, the dissent contends that "the first and only question we must answer is: whether the rule is one governing ethics? If it is, considering the burden on federal interests is unnecessary because Congress has authorized the rule's application to federal prosecutors." Dissent at 3. We must respectfully disagree. The panel in *Colorado Supreme Court II* effectively engaged in a conflict-preemption analysis—an inquiry into the presence of impermissible inconsistency *vel non* with federal law—*after* determining that Colorado Rule 3.8 was an ethics rule, and expressly rendered a holding on the preemption question. In this regard, we stated there:

> [W]e *hold* that Rule 3.8, in its mandate that a federal prosecutor ought not to disturb an attorney-client relationship without a showing of cause, does not conflict with Fed. R. CIM. P. 17, which details only the procedures for issuing a proper subpoena. Rule 17 does not abrogate the power of courts to hold an attorney to the broad normative principles of attorney self-conduct. Accordingly, we *hold* that Rule 3.8 is not inconsistent with federal law and can be adopted and enforced by the state defendants against federal prosecutors.

*Colorado Supreme Court II*, 189 F.3d at 1288–89 (emphases added). It is pellucid that we considered our holding regarding the absence of an impermissible inconsistency (i.e., the absence of a conflict) with federal law essential to our conclusion that Colorado could enforce Rule 3.8 against federal prosecutors in the trial (i.e., non-grand-jury context). It was not an aside or casual piece of dictum that we may now disregard. Therefore, contrary to the dissent, in applying the rule of *Colorado Supreme Court II*, we do not believe that our analysis can end if we determine that Rule 16-308(E) is an ethics rule. Instead, we must still determine whether Rule 16-308(E) conflicts with relevant federal law.

57

as other attorneys in that State." 28 U.S.C. § 530B(a). In *Colorado Supreme Court II*, we considered whether the Colorado rule could be deemed an ethics rule—notably, a "normative legal standard[ ] that guides the conduct of an attorney"—such that it fell within the McDade Act's purview. 189 F.3d at 1285. We defined an ethics rule as one that: (1) "bar[s] conduct recognized by consensus within the profession as inappropriate"; (2) is phrased as "a commandment dealing with morals and principles"; (3) is "vague [and] sweeping" rather than highly specific; and (4) is "directed at the attorney herself" rather than "at the progress of the claim." *Id.* at 1287–88. Measured against these criteria, we concluded that the Colorado rule was an ethics rule of the type that the McDade Act contemplates. More specifically, as we saw it, the rule sought to safeguard the attorney-client relationship—which "by general consensus of our profession [is] worthy of protection"—and was phrased as a vague, sweeping commandment "directed at the prosecutor, not at the cause of action." *Id.* at 1288.

This reasoning applies with equal force to Rule 16-308(E). It contains identical language to that found in Colorado Rule 3.8(e), and, as the commentary to the rule makes clear, it is intended to limit the issuance of attorney subpoenas to only "those situations in which there is a genuine need to intrude into the client-lawyer relationship." N.M. Rules of Prof'l Conduct, N.M.R.A. 16-308(E) cmt. 4. As such, under *Colorado Supreme Court II*, Rule 16-308(E) is an ethics rule of the sort covered by the McDade Act.[21]

---

[21]    In contrast, in *Stern*, the First Circuit concluded that the Massachusetts rule at issue "clearly extend[ed] beyond the shelter that section 530B provides" because it

**b**

We must next determine whether the challenged provisions of Rule 16-308(E),

despite being within the purview of the McDade Act, are otherwise inconsistent with (i.e.,

conflict with) federal law. As evident from the analysis in *Colorado Supreme Court II*,

the fact that a challenged state rule is determined to be an ethics rule within the McDade

Act's ambit does not necessarily mean that Congress intended that rule to trump or

impede the effectuation of otherwise applicable federal law. *See Colorado Supreme*

*Court II*, 189 F.3d at 1289 (proceeding to determine whether the ethics rule covered by

the McDade Act was otherwise "inconsistent with federal law"); *see also Stern*, 214 F.3d

at 19 ("[I]t simply cannot be said that Congress, by enacting section 530B, meant to

empower states (or federal district courts, for that matter) to regulate government

attorneys in a manner inconsistent with federal law."); *cf. United States v. Lowery*, 166

F.3d 1119, 1125 (11th Cir. 1999) ("When it comes to the admissibility of evidence in

federal court, the federal interest in enforcement of federal law, including federal

evidentiary rules, is paramount. State rules of professional conduct, or state rules on any

subject, cannot trump the Federal Rules of Evidence. . . . There is nothing in the language

or legislative history of the [McDade] Act that would support such a radical notion.").

Indeed, courts have specifically concluded that a Supremacy Clause analysis may still be

appropriate and necessary in instances where Congress has granted states regulatory

"add[ed] a novel procedural step—the opportunity for a pre-service adversarial hearing."
214 F.3d at 20. New Mexico Rule 16-308(E) contains no such procedural hurdle.

authority through language similar to that employed by the McDade Act (e.g., "to the same extent . . . as"). *See Hancock v. Train*, 426 U.S. 167, 173, 182 n.41, 198 (1976) (holding with reference to 42 U.S.C. § 1857f, which requires federal agencies engaged in activities producing air pollution to comply with state "requirements respecting control and abatement of air pollution to the same extent that any person is subject to such requirements," that Congress did not "evince[ ] with satisfactory clarity" the intent to "subject[ ] federal installations to state permit requirements"); *Colo. Dep't of Pub. Health & Env't, Hazardous Materials & Waste Mgmt. Div. v. United States*, 693 F.3d 1214, 1217 (10th Cir. 2012) (noting, where "the federal government and its agencies must comply with an [Environmental Protection Agency] authorized state program regulating hazardous waste" under 42 U.S.C. § 6961 "to the same extent, as any person," that the congressional grant of regulatory authority to the states "does not insulate a state regulation from federal preemption").

### i

The United States concedes that *Colorado Supreme Court II* dictates the answer to the otherwise-inconsistent-with-federal-law inquiry with respect to criminal proceedings in the trial (i.e., outside of the grand-jury) context. Specifically, the United States acknowledges that Rule 16-308(E) does not conflict with federal law governing trial subpoenas; therefore, it is not preempted. In this regard, in *Colorado Supreme Court II*, we determined that a Colorado ethics rule (i.e., Rule 3.8(e)) that had language identical to Rule 16-308(E) was not in conflict with Federal Rule of Criminal Procedure 17—which,

60

generally speaking, governs the process for subpoenaing testimonial and documentary evidence for trial—because Rule 17 was procedural and did "not abrogate the power of courts to hold an attorney to the broad normative principles of attorney self-conduct." 189 F.3d at 1289.[22]  The United States wisely acknowledges that this holding is dispositive here.  Therefore, we conclude that the district court appropriately determined that the challenged provisions of Rule 16-308(E) are not preempted relative to federal prosecutors' issuance of attorney subpoenas in criminal proceedings outside of the grand-jury context.[23]

---

[22]     Notably, we distinguished *Baylson*, in which the Third Circuit held that Pennsylvania's attorney-subpoena rule was preempted in the trial context, because the Pennsylvania rule contained a judicial preapproval requirement and Rule 17 makes "no allowances for the court's intervention in the subpoena procedures." *Colorado Supreme Court II*, 189 F.3d at 1286.  Like the Colorado rule, Rule 16-308(E) contains no such preapproval requirement.

[23]     We recognize that after we issued *Colorado Supreme Court II*, the First Circuit in *Stern* held that "the 'essentiality' and 'no feasible alternative' requirements [of the largely similar ethics rule at issue there] are substantially more onerous . . . than the traditional motion-to-quash standards" of Rule 17.  214 F.3d at 18.  Specifically, the First Circuit held that essentiality is "a more demanding criterion than relevancy or materiality" and that "Rule 17 jurisprudence contains no corollary to the" no-other-feasible-alternative requirement. *Id.*  It thus concluded that these "novel requirements . . . threaten[ed] to preclude the service of otherwise unimpeachable subpoenas and thus restrict[ed] the flow of relevant, material evidence to the factfinder." *Id.*  In substance, the court concluded that the essentiality and no-other-feasible-alternative provisions conflicted with otherwise applicable federal law relative to trial subpoenas (i.e., subpoenas issued outside of the grand-jury context) and were thus preempted.  Notwithstanding the First Circuit's contrary reasoning in *Stern*, we remain bound by our controlling decision in *Colorado Supreme Court II*, which concluded that a rule identical to Rule 16-308(E) did not run afoul of federal law governing trial subpoenas. *See Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1230 n.5 (10th Cir. 2010) ("[T]he precedent of prior panels which we must follow includes not only the very narrow holdings of those prior cases, but also the reasoning underlying

61

**ii**

Though its mode of analysis is still relevant, *Colorado Supreme Court II*'s holding

does not speak to the question before us: specifically, the court did not address whether

the challenged provisions of Rule 16-308(E) are preempted in the grand-jury context. *See*

189 F.3d at 1284.  Resolving this question as a matter of first impression, we conclude

that Rule 16-308(E)'s challenged provisions are conflict-preempted[24] in the grand-jury

setting because the essentiality and no-other-feasible-alternative requirements pose "an

obstacle to the accomplishment and execution of the full purposes and objectives" of the

federal legal regime governing grand-jury practice. *Arizona*, 132 S. Ct. at 2501 (quoting

*Hines*, 312 U.S. at 67).

---

those holdings, particularly when such reasoning articulates a point of law." (alteration in original) (quoting *Mendiola v. Holder*, 585 F.3d 1303, 1310 (10th Cir. 2009), *overruled on other grounds by Contreras-Bocanegra v. Holder*, 678 F.3d 811, 819 (10th Cir. 2012))).

[24]        The United States does not argue that state ethics regulation of federal prosecutors practicing before grand juries is expressly preempted.  Moreover, it appears to concede that Congress has not occupied the field of ethics regulation of federal prosecutors practicing before grand juries; in this regard, it has noted that, through the McDade Act, "Congress intended to require federal prosecutors to comply with state ethical rules and that those rules would apply to grand jury practice."  U.S. Response Br. at 44.  Notably, as to the latter (i.e., field preemption), we have previously expressed "considerable doubt" as to whether "Rules of Professional Conduct . . . apply to federal prosecutors' practice before a federal grand jury." *In re Grand Jury Proceedings*, 616 F.3d 1172, 1186 (10th Cir. 2010).  Yet, given the United States's apparent concession regarding the applicability of at least some state ethics rules in the grand-jury context, and the clear conflict between the particular challenged provisions of Rule 16-308(E) and federal grand-jury law, we need not (and do not) endeavor to reach any definitive, categorical conclusions on whether state ethics rules are excluded from the field of federal prosecutors' practices before grand juries.

62

The law of the federal grand jury springs from the fertile and robust soil of the Anglo-American legal tradition and the Constitution itself. *See United States v. Williams*, 504 U.S. 36, 47 (1992) ("'[R]ooted in long centuries of Anglo–American history,' the grand jury is mentioned in the Bill of Rights . . . ." (citation omitted) (quoting *Hannah v. Larche*, 363 U.S. 420, 490 (1960) (Frankfurter, J., concurring in result)); *Costello v. United States*, 350 U.S. 359, 362 (1956) ("The grand jury is an English institution, brought to this country by the early colonists and incorporated in the Constitution by the Founders. There is every reason to believe that our constitutional grand jury was intended to operate substantially like its English progenitor."). And, significantly, this body of grand-jury law has a firm and explicit footing in the Constitution's text through the Grand Jury Clause of the Fifth Amendment of the Bill of Rights, which "provides that federal prosecutions for capital or otherwise infamous crimes must be instituted by presentments or indictments of grand juries." *Costello*, 350 U.S. at 361–62; *see* U.S. Const. amend. V ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . .").

By the Framers' explicit design, the federal grand jury occupies a uniquely independent space in the constitutional text, apart from the three branches of government. *See Williams*, 504 U.S. at 47 ("It [i.e., the grand jury] has not been textually assigned . . . to any of the branches described in the first three Articles. It '"is a constitutional fixture in its own right."'" (quoting *United States v. Chanen*, 549 F.2d 1306, 1312 (9th Cir. 1977))); *see also R. Enters., Inc.*, 498 U.S. at 297 ("The grand jury

63

occupies a unique role in our criminal justice system."); *Chanen*, 549 F.2d at 1312 ("[U]nder the constitutional scheme, the grand jury is not and should not be captive to any of the three branches. The grand jury is a pre-constitutional institution given constitutional stature by the Fifth Amendment but not relegated by the Constitution to a position within any of the three branches of the government." (citation omitted)); Roger A. Fairfax, Jr., *Grand Jury Discretion and Constitutional Design*, 93 CORNELL L. REV. 703, 727 (2008) ("Not only is the grand jury independent of the three branches of government, but it serves as a check on them."); *cf. United States v. Kilpatrick*, 821 F.2d 1456, 1465 (10th Cir. 1987) ("The separation of powers doctrine mandates judicial respect for the independence of both the prosecutor *and* the grand jury." (emphasis added)).

By creating this space, the Framers sought to ensure that federal prosecutions for serious crimes are commenced through a fair and thorough process by a body that is free of corrupting influences and vested with the broad investigative powers necessary to find the truth. *See Costello*, 350 U.S. at 362 ("The basic purpose of the English grand jury was to provide a fair method for instituting criminal proceedings against persons believed to have committed crimes. . . . Its adoption in our Constitution as the sole method for preferring charges in serious criminal cases shows the high place it held as an instrument of justice. And in this country as in England of old the grand jury has convened as a body of laymen, free from technical rules, acting in secret, pledged to indict no one because of prejudice and to free no one because of special favor."); *Williams*, 504 U.S. at 47 ("[T]he

64

whole theory of its [i.e., the grand jury's] function is that it belongs to no branch of the institutional Government, serving as a kind of buffer or referee between the Government and the people."); Fairfax, *supra*, at 729 ("Just as constitutional structure provides each of the branches with the prerogative to check the others, the grand jury, with its robust discretion, checks the judicial, executive, and legislative branches and represents a structural protection of individual rights." (footnote omitted)); Note, Susan M. Schiappa, *Preserving the Autonomy and Function of the Grand Jury:* United States v. Williams, 43 CATH. U. L. REV. 311, 330–31 (1993) ("The Framers of the Constitution intended the federal grand jury, like its English forerunner, to act as both a 'sword and a shield.' As a sword, the grand jury has extraordinary power to carry out its investigatory function, and acts free of procedural or evidentiary rules. . . . As a shield, the grand jury is designed 'to provide a fair method for instituting criminal proceedings.'" (footnotes omitted) (citations omitted)); *see also United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 430 (1983) ("The purpose of the grand jury requires that it remain free, within constitutional and statutory limits, to operate 'independently of either prosecuting attorney or judge.'" (quoting *Stirone v. United States*, 361 U.S. 212, 218 (1960))).

As with most express provisions of the Constitution,[25] the Framers did not

---

[25]    In 1819, the Supreme Court made clear that "there is no phrase in the [Constitution] which[ ] . . . requires that everything granted shall be expressly and minutely described." *M'Culloch v. State*, 17 U.S. 316, 406 (1819); *see also id.* at 406–07 ("The men who drew and adopted [the Constitution] had experienced the embarrassments resulting from the insertion of [certain] word[s] in the articles of confederation, and probably omitted [them], to avoid those embarrassments."). In an informative manner,

bequeath a detailed blueprint in the Fifth Amendment's Grand Jury Clause of how its textual constraint on the prosecution of serious crimes should be effectuated. Federal courts have endeavored, however, to adhere closely to the text and animating purposes of the Fifth Amendment's Grand Jury Clause in clarifying the scope of the grand jury's investigative power.[26] In this regard, the Supreme Court has recognized that the Framers

---

the Court elaborated:

> A constitution, to contain an accurate detail of all the subdivisions of which its great powers will admit, and of all the means by which they may be carried into execution, would partake of the prolixity of a legal code, and could scarcely be embraced by the human mind. It would, probably, never be understood by the public. Its nature, therefore, requires, that only its great outlines should be marked, its important objects designated, and the minor ingredients which compose those objects, be deduced from the nature of the objects themselves. That this idea was entertained by the framers of the American constitution, is not only to be inferred from the nature of the instrument, but from the language.

*Id.* at 407; *see also Nat'l Fed'n of Indep. Bus. v. Sebelius*, --- U.S. ----, 132 S. Ct. 2566, 2615 (2012) (Ginsburg, J., concurring in part and dissenting in part) (observing that the Framers "recognized that the Constitution was of necessity a 'great outlin[e],' not a detailed blueprint, and that its provisions included broad concepts, to be 'explained by the context or by the facts of the case.'" 132 S. Ct. at 2615 (alteration in original) (citations omitted)).

[26] Indeed, the federal courts' grand-jury jurisprudence reflects a careful, ongoing effort to glean inferences from the text and history of the Constitution's Grand Jury Clause regarding the Framer's conception of the proper scope of the grand jury's investigative powers. For example, in *Costello*, the Court rebuffed a defendant's argument that indictments should be "open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury." 350 U.S. at 363. The Court reasoned that the Fifth Amendment's vision of the proper functioning of the grand jury would not permit such a rule. In this regard, the court observed:

> [T]he resulting delay would be great indeed. The result of such

envisioned that the federal grand jury would possess a broad range of discretion; more specifically, the Court has held that the grand jury's function "is to inquire into all information that might possibly bear on its investigation until it has identified an offense or has satisfied itself that none has occurred." *R. Enters., Inc.*, 498 U.S. at 297. In carrying out its role in the criminal-justice system, a grand jury "paints with a broad brush," *id.*; unlike federal courts, it is not bound by Article III's case or controversy requirement or by "the technical procedural and evidentiary rules governing the conduct of criminal trials," *Williams*, 504 U.S. at 66–67 (quoting *United States v. Calandra*, 414 U.S. 338, 343 (1974)); *see also Costello*, 350 U.S. at 362 (noting that grand juries carry out their investigative function "free from technical rules"). Thus, while a grand jury may not "engage in arbitrary fishing expeditions," *R. Enters., Inc.*, 498 U.S. at 299, it has relatively broad power to run down available clues and examine all relevant witnesses to determine if there is probable cause to prosecute a particular defendant, *see Branzburg v. Hayes*, 408 U.S. 665, 701 (1972).

Of particular importance here is the Supreme Court's recognition that, in

---

a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment.

*Id.* As *Costello* illustrates, federal grand-jury law is firmly grounded in the text and history of the Grand Jury Clause of the Fifth Amendment. Accordingly, insofar as Rule 16-308(E) is determined to be preempted in the grand-jury context—a conclusion that we reach *infra*—the law effectuating that preemption through the Supremacy Clause would be the Grand Jury Clause of the Fifth Amendment.

performing its constitutionally sanctioned investigative role, a grand jury may issue

subpoenas that do not meet the stringent requirements imposed on trial subpoenas.

Specifically, in *United States v. R. Enterprises, Inc.*, the Court held that the standards for

trial subpoenas announced in *United States v. Nixon*, 418 U.S. 683 (1974)—namely,

relevancy, admissibility, and specificity—do not apply to grand-jury subpoenas. *See R.*

*Enters., Inc.*, 498 U.S. at 298–99. Instead, where a grand-jury subpoena is challenged on

relevancy grounds, it will only be quashed if "there is no reasonable *possibility* that the

category of materials the Government seeks will produce information relevant to the

general subject of the grand jury's investigation." *Id.* at 301 (emphasis added). The

Court concluded that the more restrictive *Nixon* standards "would invite procedural

delays and detours while courts evaluate[d] the relevancy and admissibility of

documents." *Id.* at 298; *see also In re Grand Jury Subpoenas*, 906 F.2d 1485, 1496 (10th

Cir. 1990) (stating that "the government is not required to make any further showing of

need or lack of another source for the subpoenaed information").[27]

---

[27] The Court in *R. Enterprises* also focused on the possibility that a higher relevance standard would require prosecutors to "explain in too much detail the particular reasons underlying a subpoena" and would thus "compromise 'the indispensable secrecy of grand jury proceedings.'" 498 U.S. at 299 (quoting *United States v. Johnson*, 319 U.S. 503, 513 (1943)); *see* Fed. R. Crim. P. 6(e) (imposing secrecy requirements on participants in the grand-jury process). In the context of challenges to the validity of state attorney-subpoena rules, some courts—including our own—have taken note of the rules' possible impact on grand-jury secrecy. *See, e.g.*, *Stern*, 214 F.3d at 16 (noting that the rule at issue "undermine[d] the secrecy of [grand-jury] proceedings"); *see also Colorado Supreme Court I*, 87 F.3d at 1166 (concluding that the allegation that the Colorado rule compromised grand-jury secrecy was sufficient to meet the injury-in-fact requirement for purposes of standing). We acknowledge that grand-jury secrecy may be an important

In light of the Supreme Court's indication—in construing the mandate of the Grand Jury Clause—that, for federal grand juries to properly carry out their investigative role, there must be no more than minimal limitations placed on the kinds of evidence that they can consider, we believe that Rule 16-308(E)'s rigorous standards—i.e., the requirements of essentiality and no-other-feasible-alternative—clearly create "an obstacle to the accomplishment and execution of" the federal grand jury's constitutionally authorized investigative function. *Arizona*, 132 S. Ct. at 2501 (quoting *Hines*, 312 U.S. at 67). To be sure, generally speaking, we do not question the proposition that Congress has considerable leeway to authorize states to regulate the ethical conduct of federal prosecutors practicing before grand juries. *Cf. In re Grand Jury*, 111 F.3d 1066, 1073 (3d Cir. 1997) ("Just as grand juries must operate within the confines of the Constitution, so too must they comply with the limitations imposed on them by Congress (*as long as those limitations are not unconstitutional*)." (emphasis added) (citation omitted)). However, we remain acutely aware of the fact that, by the Framers' express design, the federal grand jury has an independent constitutional stature and stands apart from all three branches of government. Consequently, it seems safe to reason that Congress's power to authorize states to burden the grand jury's investigative functions is not unbounded. At the very

---

consideration in determining whether a state ethics rule is preempted. However, because Rule 16-308(E)'s heightened standards—and the concomitant restriction on evidence available to a grand jury—provide an ample basis for us to conclude that the challenged provisions of Rule 16-308(E) are preempted, we need not definitively opine on the merits of this alternative secrecy rationale.

69

least, we presume that Congress is not free to authorize states to eviscerate the grand jury and render it nugatory. *See Ex parte Wilson*, 114 U.S. 417, 426 (1885) ("The purpose of the [Grand Jury Clause of the Fifth] amendment was to limit *the powers of the legislature*, as well as of the prosecuting officers, of the United States. . . . [T]he constitution protect[s] every one from being prosecuted, without the intervention of a grand jury, for any crime which is subject by law to an infamous punishment[;] no declaration of congress is needed to secure or *competent to defeat* the constitutional safeguard." (emphases added) (citations omitted)); *accord Mackin v. United States*, 117 U.S. 348, 351 (1886).

We do not suggest that Rule 16-308(E)'s rigorous standards tread closely to this danger zone or have the foregoing nullifying effect. However, even assuming (without deciding) that Congress would be free to authorize states to regulate—through provisions like the challenged portions of Rule 16-308(E)—the ethical conduct of federal prosecutors practicing before grand juries, the significant burdens that such provisions would impose on grand juries' constitutionally authorized investigative functions, compel us to insist that, if Congress is to so act, that it speak more clearly than it has in the McDade Act.[28] *See Hancock*, 426 U.S. at 179 ("Because of the fundamental importance

---

[28]     Unlike our dissenting colleague, given the unique, independent constitutional stature of the federal grand jury, we believe it would be inappropriate and especially unwise for us to infer from historical events preceding the passage of the McDade Act or the Act's "general reference to ethics rules," Dissent at 17, Congress's intent to permit states—through ethical rules—to impose such significant restrictions on the grand jury's investigative function. *Cf.* Antonin Scalia & Bryan A. Garner, READING

of the principles shielding federal installations and *activities* from regulation by the States, an authorization of state regulation is found only when and to the extent there is 'a clear congressional mandate,' 'specific congressional action' that makes this authorization of state regulation 'clear and unambiguous.'" (emphasis added) (footnotes omitted)); *accord Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 180 (1988) ("It is well settled that the *activities* of federal installations are shielded by the Supremacy Clause from direct state regulation unless Congress provides 'clear and unambiguous' authorization for such regulation." (emphasis added) (quoting *EPA v. State Water Res. Control Bd.*, 426 U.S. 200, 211 (1976))); *see also Stern*, 214 F.3d at 19 (insisting, under the authority of *Hancock*, on clear congressional authorization for state ethics rules to regulate federal grand-jury practice, and concluding that the McDade Act does not evince it).

Under Rule 16-308(E), a prosecutor must determine whether there is a reasonable basis to believe that an attorney subpoena is "essential" and that there is "no other feasible alternative" source from which to obtain the information; this is unquestionably a much greater burden than the federal requirement that there be only a "reasonable *possibility* that the [information] . . . [is] relevant to the general subject of the grand jury's investigation." *R. Enters., Inc.*, 498 U.S. at 301 (emphasis added). Holding federal

---

LAW: THE INTERPRETATION OF LEGAL TEXTS 56 (2012) ("[T]he purpose must be derived from the text, not from extrinsic sources such as legislative history or an assumption about the legal drafter's desires.").

prosecutors licensed in New Mexico to this higher standard would invariably restrict the information a grand jury could consider, and thus would "impede its investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws." *Id.* at 299 (quoting *United States v. Dionisio*, 410 U.S. 1, 17 (1973)); *see also Stern*, 214 F.3d at 16–17 (concluding that the essentiality and no-other-feasible-alternative requirements would "encroach[ ] unduly upon grand jury prerogatives," as described in *R. Enterprises*); *Baylson*, 975 F.2d at 109–10 (concluding that substantive restraints on grand-jury subpoenas, including a no-other-feasible-alternative requirement, were inconsistent with *R. Enterprises*).

In sum, we conclude that the challenged provisions of Rule 16-308(E) impose on every federal prosecutor licensed in New Mexico who seeks to issue an attorney subpoena in the grand-jury context far more onerous conditions than those required by federal law. More specifically, because such heightened requirements for attorney subpoenas would impede the grand jury's broad investigative mandate—which the Framers specifically envisioned in enacting the Grand Jury Clause of the Fifth Amendment—the challenged provisions of Rule 16-308(E) conflict with federal law and are preempted.

## D

Finally, Defendants challenge the scope of the injunction that the district court issued. We review this question for an abuse of discretion. *See ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735, 752 (10th Cir. 2011); *accord Rocky Mountain Christian*

72

*Church v. Bd. of Cty. Comm'rs*, 613 F.3d 1229, 1239–40 (10th Cir. 2010). That is, we reverse if the district court's injunction embodies an "arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *ClearOne Commc'ns*, 643 F.3d at 752 (quoting *Rocky Mountain Christian Church*, 613 F.3d at 1239–40).

The district court's injunction in this case prohibits Defendants "from instituting, prosecuting, or continuing any disciplinary proceeding or action against any federal prosecutor for otherwise lawful actions taken in the course of a grand jury investigation or proceeding on the ground that such attorneys violated Rule 16-308(E) of the New Mexico Rules of Professional Conduct." Aplts.' App. at 326–27. Defendants claim that this injunction "is much broader than necessary to remedy the alleged conflict" in two respects. Aplts.' Opening Br. at 55.

First, Defendants argue that the injunction would be better tailored to concerns about grand-jury secrecy if it is limited to "particular instance[s]" where a federal prosecutor is able to make "an adequate showing that the grand jury proceedings [a]re both secret and relevant to the disciplinary charges." *Id.* at 56. On the basis that we resolve this case, this argument is unavailing: regardless of whether disciplinary proceedings would only compromise grand-jury secrecy in *certain* situations—a proposition we consider dubious—the essentiality and no-other-feasible-alternative requirements conflict overall with federal grand-jury practice because they impose overly restrictive standards for the issuance of attorney subpoenas in *every* instance. Thus, a broad injunction is appropriate to remedy such a conflict.

Second, Defendants claim that the injunction would also prohibit the enforcement

of Rule 16-308(E)(1) against a federal prosecutor who knowingly subpoenas a lawyer for

privileged information. While the district court's order does refer generally to "Rule 16-

308(E)," *see, e.g.,* Aplts.' App. at 327, the language of the injunction and the context of

the order make plain that the enforcement of Rule 16-308(E)(1) is not prohibited. *See*

*Alley v. U.S. Dep't of Health & Human Servs.*, 590 F.3d 1195, 1208 (11th Cir. 2009)

("What the plain text of the . . . injunction indicates, the context in which that language

was written reinforces; much of that context is provided in the opinion issued in tandem

with the injunction."); *Youakim v. McDonald*, 71 F.3d 1274, 1283 (7th Cir. 1995) ("[T]he

terms of an injunction, like any other disputed writing, must be construed in their proper

context.").

Here, the United States has not challenged the constitutionality of Rule 16-

308(E)(1)'s requirement that prosecutors possess a reasonable belief that information

sought from attorneys by subpoena be non-privileged, and the district court expressly

recognized that Rule 16-308(E)(1) was not at issue. Furthermore, the injunction is only

limited to "otherwise lawful actions" taken by prosecutors, Aplts.' App. at 327, and the

knowing issuance of subpoenas to obtain privileged information is inconsistent with

federal law, *see In re Grand Jury Proceedings*, 616 F.3d at 1181–82 (examining whether

information sought by subpoena was covered by the attorney-client privilege, which

would "provide legitimate grounds for refusing to comply with a grand jury subpoena");

*In re Impounded*, 241 F.3d 308, 316 (3d Cir. 2001) (recognizing that "[t]he grand jury

74

may not 'itself violate a valid privilege'" and that "courts may quash an otherwise valid grand jury subpoena for an attorney's testimony under the attorney-client privilege" (quoting *Calandra*, 414 U.S. at 346)). The injunction should, therefore, reasonably be read as permitting the enforcement of Rule 16-308(E)(1) where a prosecutor engages in unlawful action by issuing a subpoena to an attorney without a reasonable belief that the information sought is not privileged.

Thus, read in light of "the relief sought by the moving party . . . and the mischief that the injunction seeks to prevent," *United States v. Christie Indus., Inc.*, 465 F.2d 1002, 1007 (3d Cir. 1972), we conclude that the district court's injunction did not evince an abuse of discretion because it only bars enforcement of the unconstitutional aspects of Rule 16-308(E)—namely, all applications of subsections (2) and (3) in the grand-jury context—and does not enjoin the enforcement of subsection (1).

### III

In sum, we hold that (1) the district court had subject-matter jurisdiction because the United States had standing and the claim was ripe for review; (2) because the United States's preemption claim is a legal one, the district court did not abuse its discretion in denying discovery; (3) the district court correctly concluded that (a) under our decision in *Colorado Supreme Court II*, the challenged provisions of Rule 16-308(E) are not preempted outside of the grand-jury context, but (b) they are preempted in the grand-jury setting because they conflict with the federal-law principles—embodied in the Grand Jury Clause of the Constitution, as interpreted by the Supreme Court—that govern federal

75

prosecutors' attorney-subpoena practices before grand juries, and thereby stand as an obstacle to the effectuation of the grand jury's constitutionally authorized investigative functions; and (4) the district court's injunction appropriately prohibits the enforcement of Rule 16-308(E)(2) and (3) against federal prosecutors practicing before grand juries, while permitting the enforcement of Rule 16-308(E)(1).  We **AFFIRM** the district court's judgment.

14-2037, 14-2049, *United States v. Supreme Court of New Mexico et al.*

**TYMKOVICH**, Chief Judge, concurring in part and dissenting in part.

The United States claims it is immunized from following New Mexico's Rule of Professional Conduct 16-308(E),[1] which establishes professional guidelines for prosecutors issuing subpoenas to third-party lawyers in criminal cases. The majority agrees, and finds that to apply the rule to federal prosecutors would violate the Constitution's Supremacy Clause because New Mexico's rule conflicts with federal law governing grand-jury practice and procedure.

But this Supremacy Clause challenge must fail if Congress has authorized the application of this rule—and it has. In 1998, Congress enacted the McDade

---

[1] Rule 16-308(E) provides,

The prosecutor in a criminal case shall: . . .

    E.    not subpoena a lawyer in a grand jury or other criminal proceeding to present evidence about a past or present client unless the prosecutor reasonable believes:

        (1)    the information sought is not protected from disclosure by an applicable privilege;

        (2)    the evidence sought is essential to the successful completion of an ongoing investigation or prosecution;

        (3)    there is no other feasible alternative to obtain the information . . . .

Amendment, 28 U.S.C. § 530B,[2] instructing federal prosecutors that they "shall be subject" to state rules of ethics "governing attorneys in each State where [they] engage in [their] duties, to the same extent and in the same manner as other attorneys in that State." And in *United States v. Colorado Supreme Court (Colorado Supreme Court II)*, 189 F.3d 1281, 1284 (10th Cir. 1999), we established a method for determining whether a state rule falls within the scope of the McDade Amendment and held that a Colorado rule (identical to New Mexico's rule), requiring compliance with state trial subpoena rules, applied to federal prosecutors. That should end the matter.

The majority, however, holds Rule 16-308(E) does not apply to federal prosecutors because it unduly burdens federal interests when applied in the *grand*

---

[2] In full, the Amendment reads,

§ 530B. Ethical standards for attorneys for the Government

(a) An attorney for the Government shall be subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State.

(b) The Attorney General shall make and amend rules of the Department of Justice to assure compliance with this section.

(c) As used in this section, the term "attorney for the Government" includes any attorney described in section 77.2(a) of part 77 of title 28 of the Code of Federal Regulations and also includes any independent counsel, or employee of such a counsel, appointed under chapter 40.

2

*jury* context.  Thus, despite categorizing the rule as one governing "ethics," which Congress clearly intended to apply to federal prosecutors, the majority reads *Colorado Supreme Court II* to also require a conflict preemption analysis. Applying the obstacle-conflict preemption doctrine, the majority holds New Mexico's rule is preempted in the grand jury context because it places more onerous conditions on federal prosecutors issuing subpoenas than required by the Supreme Court in *United States v. R. Enterprises, Inc.*, 498 U.S. 292 (1991).  The majority grounds its preemption analysis not in any congressional mandate—because, indeed, Congress expressly stated federal prosecutors "shall be subject" to state ethics rules—but in the Constitution's text by way of the Fifth Amendment's Grand Jury Clause.  But New Mexico's rule is not inconsistent with the Grand Jury Clause's guarantee that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless in a presentment or indictment of a Grand Jury."  Instead, the rule merely instructs prosecutors practicing in New Mexico (federal or state alike) of their professional duty when issuing subpoenas to third-party lawyers in criminal cases.

As I see it, the first and only question we must answer is: whether the rule is one governing ethics?  If it is, considering its burden on federal interests is unnecessary because Congress has authorized the rule's application to federal prosecutors.  And because *Colorado Supreme Court II* classified an identical rule as an ethics rule, the answer is straightfoward.  Since the majority's holding

3

departs from Congress's clear intent to apply all state ethics rules to federal prosecutors, I respectfully dissent.[3]

## I. Discussion

### A. *The McDade Amendment*

I begin with the statutory background on which we all agree. No one disputes that "state regulation" of "federal . . . activities" can be authorized by a "clear congressional mandate" making that "authorization of state regulation clear and unambiguous." *Hancock v. Train*, 426 U.S. 167, 179 (1976). The United States, of course, acknowledges there is no Supremacy Clause problem if federal law unambiguously authorizes the application of the state rules at issue here. *See* Second Br. at 38 ("[I]f Congress has, through the McDade Act, clearly and unambiguously authorized the application to federal prosecutors of [the rule], New Mexico has not violated the Supremacy Clause."). And the Amendment's text is clear: "An attorney for the Government shall be subject to State laws and rules . . . governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State." § 530B(a); *Colo. Supreme Court II*, 189 F.3d at 1284 (noting state laws and rules contemplated by the Amendment are "state professional rules" or

---

[3] I concur with the majority's conclusions on standing and ripeness. My analysis is the same no matter whether we look at the challenge facially or as-applied.

"rule[s] of professional ethics").

Indisputably, then, *if* a state rule is an ethics rule, the McDade Amendment clearly and unambiguously authorizes its application to federal prosecutors. No one doubts this is an ethics rule in at least one context. In *Colorado Supreme Court II*, we created a test for determining whether a rule is an ethics rule and applied the test to hold an identical rule as ethical in all non-grand-jury criminal proceedings.[4] 189 F.3d at 1284, 1288. The question in that case was whether a Colorado rule identical to New Mexico's violated the Supremacy Clause as applied in "criminal proceedings other than a grand jury." *Id*. at 1284. As the majority notes, that question turned on whether the rule was "'a rule of professional ethics clearly covered by the McDade Act, or a substantive or procedural rule that is inconsistent with federal law.'" Majority Op. 5, 55 (quoting *Colo. Supreme Court II*, 189 F.3d at 1284).

We first noted the definition of "ethical": "'[o]f or relating to moral action,

---

[4] *Colorado Supreme Court II* was the second time we had addressed the United States's Supremacy Clause challenge to this Colorado rule. We previously reversed and remanded the district court's dismissal for lack of standing when we first considered that case. *See United States v. Colo. Supreme Court (Colorado Supreme Court I)*, 87 F.3d 1161, 1166–67 (10th Cir. 1996). When we addressed the rule in *Colorado Supreme Court I*, it contained a requirement precluding the issuance of a third-party subpoena unless the attorney "obtain[ed] prior judicial approval after the opportunity for an adversarial proceeding." *Id.* at 1163. By the time of *Colorado Supreme Court II*, that requirement had been removed, leaving us with a rule governing third-party subpoenas indistinguishable from New Mexico's. *See Colo. Supreme Court II*, 189 F.3d at 1284.

5

conduct, motive or character. . . . Professionally right or befitting; conforming to professional standards of conduct.'" *Colo. Supreme Court II*, 189 F.3d at 1284 (quoting Black's Law Dictionary 553 (6th ed. 1990)); *see also id.* at 1285 (quoting *In re Snyder*, 472 U.S. 634, 645 (1985)) (noting the Supreme Court's definition of unethical conduct as "conduct contrary to professional standards that shows an unfitness to discharge continuing obligations to clients or the courts, or conduct inimical to the administration of justice"). In short, the question was whether Colorado's rule was "one of those normative legal standards that guides the conduct of an attorney." *Id.*

To answer that question, we outlined a three-prong test.[5] "First," an ethical rule bars "conduct recognized by consensus within the profession as inappropriate." *Id.* at 1287. "Second," such rules are like "commandment[s] dealing with morals and principles" and in "directing sweeping commandments of conduct" can be "quite vague" in nature, in contrast to procedural or substantive law, "the purposes of which are to direct a cause of action through the courts." *Id.* "Finally," such rules are "directed at the attorney herself." *Id.* "Applying [those] factors" to Colorado's rule, we "easily conclud[ed] the rule [was] an

---

[5] Notably, this means a rule is not applicable to federal prosecutors just because a state enacts rules of professional responsibility; the state rule must still pass our three-prong test. In other words, the McDade Amendment does not give states carte blanche to regulate federal prosecutors under the guise of ethical regulation.

6

ethical one." *Id.* at 1288.

But the majority relies on a brief aside at the end of the opinion, made after we applied our test and concluded the rule was an ethics rule, that Colorado's rule also "does not conflict with" a particular federal rule of criminal procedure and, "[a]ccordingly, . . . is not inconsistent with federal law." *Id* at 1288–89. That statement, however, is merely an affirmation of the truism that it is not inconsistent with federal law to apply state ethics rules as federal law instructs.

A natural reading of the opinion and a reasonable understanding of the word "ethical" supports that position. We plainly thought what mattered was the meaning of the word ethical, and every factor we announced goes to the essence of that word. The Amendment speaks of "Ethical standards," § 530B, and we generally interpret words in a statute "as taking their ordinary, contemporary, common meaning." *Bilski v. Kappos*, 561 U.S. 593, 603 (2010). And a rule governing ethics, by our own definition, is neither a substantive nor procedural rule. Thus, the McDade Amendment suffices to ensure that rules of truly ethical concern fit unobtrusively into the federal scheme, because it explicitly deems such rules applicable to federal prosecutors.

And I cannot see how New Mexico's rule is any less a "normative legal standard[]" guiding "the conduct of an attorney," *Colo. Supreme Court II*, 189 F.3d at 1285, than the identical rule we considered in *Colorado Supreme Court II* because it might affect federal prosecutors in grand-jury practice. It, no less,

7

"bar[s] conduct recognized by consensus within the profession as inappropriate." *Id.* at 1287. It deals with the same "morals and principles" as that rule, and, like that rule, it is "directed at the attorney herself." *Id.* Because we are bound by *Colorado Supreme Court II*, there is no Supremacy Clause violation here.[6]

The foregoing analysis of the McDade Amendment's plain language and our decision in *Colorado Supreme Court II* demonstrates the infirmity of the Supremacy Clause argument. But understanding the problem Congress wished to fix by passing the McDade Amendment operates to underscore the inapplicability of an additional independent preemption analysis.

In 1989, the Department of Justice issued the "Thornburgh Memorandum," which concluded that "although the states have the authority to regulate the ethical conduct of attorneys admitted to practice" in their courts, federal prosecutors may only be regulated in that manner "if the regulation does not conflict with the federal law or with the attorneys' federal responsibilities." Bruce A. Green, *Whose Rules of Professional Conduct Should Govern Lawyers in Federal Court and How Should the Rules Be Created?*, 64 Geo. Wash. L. Rev.

_____

[6] The United States also challenges the application of New Mexico's rule outside the grand jury context. But as the majority explains, this challenge "is primarily form, not substance." Majority Op. 12. I agree with the majority that our review is confined by our prior conclusions in *Colorado Supreme Court II*, Majority Op. 60, absent direction from the Supreme Court or the en banc panel. I also note the Supreme Court has not had the opportunity to construe whether our delineation between rules that are ethical and those that are substantive or procedural is a correct one.

8

460, 471 (1996) (quoting Memorandum from Dick Thornburgh, Attorney General, U.S. Department of Justice, to All Justice Department Litigators (June 8, 1989)). The DOJ intended to insulate federal prosecutors in at least some circumstances from compliance with state ethics rules modeled upon ABA Model Rule 4.2, which prohibited ex-parte attorney contacts with a represented party. *N.Y. State Bar Ass'n v. FTC*, 276 F. Supp. 2d 110, 132 (D.D.C. 2003).

The memorandum received substantial criticism. *See id.*; *In re Doe*, 801 F. Supp. 478, 487 (D.N.M. 1992); *see also United States v. Tapp*, No. CR107-108, 2008 WL 2371422, at *6 (S.D. Ga. June 4, 2008) (noting criticism from "the ABA, the state bar associations, the Judicial Conference of the United States, the Conference of State Chief Justices, [and] the Federal Bar Association"). Nevertheless, in 1994, the DOJ promulgated a regulation dubbed the Reno Regulation, which essentially codified the Thornburgh Memorandum. *See N.Y. State Bar Ass'n*, 276 F. Supp. 2d at 132; *see also* John H. Lim, *The Side Effects of a Legal Ethics Panacea: Revealing a United States's Standing Committee's Proposal to "Standardize" Ethics Rules in the Federal Courts as an Attempt to Undermine the No-Contact Rule*, 13 Geo. J. Legal Ethics 547, 568 (2000) ("[T]he Reno [Regulation was] a virtual reprise of the Thornburgh Memo.").

The Eighth Circuit invalidated portions of the Reno Regulation as beyond the DOJ's statutory authority, *see United States ex rel. O'Keefe v. McDonnell Douglas Corp.*, 132 F.3d 1252, 1257 (8th Cir. 1998), and criticism of the DOJ's

9

attempt to insulate itself from state rules of professional responsibility persisted. Litigation continued on the subject. *See, e.g.*, *Colo. Supreme Court I*, 87 F.3d at 1163 (noting challenge by the United States in 1996 to application of certain Colorado ethics rules to federal prosecutors); *Stern v. U.S. Dist. Court for Dist. of Mass.*, 214 F.3d 4, 9 (1st Cir. 2000) (noting same type of challenge to application of Massachusetts ethics rules to federal prosecutors).

Thus, in 1998, it was unclear whether or to what extent the DOJ could exempt its attorneys from complying with a given state's rules. Note, *Federal Prosecutors, State Ethics Regulations, and the McDade Amendment*, 113 Harv. L. Rev. 2080, 2088 (2000) ("By 1998, the war over ethics regulations had reached a stalemate."). Congress clarified that uncertainty with the McDade Amendment. *See N.Y. State Bar Ass'n*, 276 F. Supp. 2d at 133 ("[I]n the face of the Justice Department's repeated attempts to exclude its attorneys from compliance with state bar rules, Congress adopted the [McDade Amendment] . . . ."). The method Congress chose lacked any of the exemption-granting language present in the controversial Thornburgh Memorandum and Reno Regulation. And we should not take Congress's failure to include those exemptions as reason to read those exemptions into the plain meaning of a word—ethical—that does not naturally encompass them. The simpler reading is that Congress was aware of the debate and came down on the side of a blanket authorization of any rule deemed to

govern attorney ethics.[7]  *See Federal Prosecutors, State Ethics Regulations, and the McDade Amendment*, *supra*, at 2088 ("[U]nlike prior DOJ guidelines, [the McDade Amendment] affords no exceptions for federal prosecutors when state ethics rules impinge on federal law enforcement interests.").  That is the reading we adopted in *Colorado Supreme Court II*.[8]

Of course, Congress did not intend to allow states to regulate government attorneys in a manner inconsistent with federal law.  But after the McDade Amendment, regulation of federal prosecutors via rules that are truly ethical in

---

[7]  It is unsurprising that Congress chose such a broadly sweeping method in light of the long tradition of states "exercis[ing] extensive control over the professional conduct of attorneys."  *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 434 (1982) (noting "special importance" of the "State's interest in the professional conduct of attorneys involved in the administration of criminal justice"); *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 635 (1995) (noting "the standards and conduct of state-licensed lawyers have traditionally been subject to extensive regulation by the States").

[8]  *See Colo. Supreme Court II*, 189 F.3d at 1284 (outlining the operative question as "whether Rule 3.8 violates the Supremacy Clause now *turns on* whether the rule is a rule of professional ethics clearly covered by the McDade Act, *or a substantive or procedural rule* that is *inconsistent with federal law*" (emphasis added)).  Other commentators agree.  Sara S. Beale, et al., Grand Jury Law & Prac. § 6:24 (2d ed.) ("[T]he question whether Rule 3.8(e) may be applied to federal prosecutors *may turn on* whether it is treated as a procedural rule or an ethical rule. . . . The Tenth Circuit held that the modified version of Rule 3.8(e) adopted in Colorado is an ethical rule rather than a procedural rule and therefore was applicable to federal prosecutors under the McDade Act." (emphasis added) (footnotes omitted)); 2 Charles Alan Wright, et al., Fed. Prac. & Proc. Crim. § 276 (4th ed.) (citing *Colorado Supreme Court II*, 189 F.3d at 1288 and stating "*if* such local rule is *characterized as an ethics provision* rather than a substantive or procedural rule, it may by imposed upon federal prosecutors *consistent with the Supremacy Clause*." (emphasis added)).

11

nature is expressly authorized by, and therefore consistent with, the dictates of federal law.  It would be perverse to say states act in a manner inconsistent with federal law when they act as federal law instructs.  Whether the Amendment's authorization of such regulation in these circumstances is a wise policy choice is not a question this court can or should answer.

## B.  *Grand-Jury Practice and Procedure as Preemptive*

In proceeding with its preemption analysis, the majority rests its preemption finding on the role grand-jury practice and procedure plays in the federal legal system—particularly, that New Mexico's rule imposes more onerous conditions on federal prosecutors issuing subpoenas to third-party lawyers in a grand jury context than required by the Supreme Court in *United States v. R. Enterprises, Inc.*, 498 U.S. 292 (1991).  Majority Op. 61–71.  So to adhere to the Supremacy Clause's dictate that only three named sources of federal law enjoy supremacy ("This Constitution," "the Laws of the United States," and "all Treaties," Const. art. VI, cl. 2) the majority reasons the grand-jury subpoena standard must be traced to the constitutional significance of grand juries as recognized in the Fifth Amendment's Grand Jury Clause.[9]

---

[9]  The majority also concludes New Mexico's rule stands as an obstacle to the important investigative function of grand juries.  But New Mexico's rule (as a rule of ethics) is not directed at the grand jury as an institution.  It is directed only at prosecutors.  Simply because the prevailing practice is for prosecutors to issue subpoenas on behalf of grand juries, Sara S. Beale, et al., Grand Jury Law & Prac. § 6:2 (2d ed.), is insufficient to conclude the rule violates the Supremacy

12

As an initial matter, I note the peculiar circumstances that this case presents. Our conflict preemption analysis requires us to compare a state statute to its federal counterpart and evaluate whether (1) "compliance with both federal and state regulations is a physical impossibility," or (2) *the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.* *Arizona v. United States*, 132 S. Ct. 2492, 2501 (2012) (emphasis added) (citations and internal quotation marks omitted). But as the majority presents it here, we are deciding whether New Mexico's rule—which, as a rule of ethics, Congress has authorized its application by enacting the McDade Amendment—stands as an obstacle to the accomplishment and execution of the federal grand-jury subpoena standard as announced by judicial decision. Majority Op. 66–67 (discussing grand-jury subpoena standard announced in *R. Enterprises*). Thus, the federal interest here is one of judicial making, and Congress has seen fit to expressly authorize the conflict.

The majority relies heavily on the Grand Jury Clause to ground its preemption analysis in some constitutional text. Although there was no mention of grand juries in the original Constitution, the Fifth Amendment reads, "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." This guarantee "confer[s] a

_____

Clause as being inconsistent with the protections of the Grand Jury Clause.

13

right not to be tried (in the pertinent sense) when there is no grand jury indictment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 802 (1989); *see also Ex parte Wilson*, 114 U.S. 417, 426 (1885) ("The purpose of the [Grand Jury Clause] was to limit the powers of the legislature, as well as of the prosecuting officers, of the United States. . . . [T]he constitution protect[s] every one from being prosecuted, without the intervention of a grand jury, for any crime which is subject by law to an infamous punishment."). The Supreme Court, however, has limited the Grand Jury Clause's reach by, for one, not compelling its application to the states through the Due Process Clause. *See generally Hurtado v. California*, 110 U.S. 516 (1884); *see also* Jerold H. Israel, *Free-Standing Due Process and Criminal Procedure: The Supreme Court's Search for Interpretive Guidelines*, 45 St. Louis U. L.J. 303, 385 (2001) ("Of the specific guarantees aimed at the criminal justice process, only the Fifth Amendment requirement of prosecution by indictment or presentment quite clearly will not be incorporated [into the Fourteenth Amendment's due process guarantees].").

The majority's conclusion that the standard adopted in *R. Enterprises* is mandated by the Grand Jury Clause (thus, taking on constitutional supremacy) reads too much into the Supreme Court's decision. The Court clearly defined its task: "[T]he focus of our inquiry is the limit imposed on a grand jury by Federal Rule of Criminal Procedure 17(c)." *R. Enters.*, 498 U.S. at 299 ("'[Rule 17(c)] provides that the court on motion made promptly may quash or modify the

14

subpoena if compliance would be unreasonable or oppressive.'"). Because "reasonable[ness] depends on the context," *id.*, "[t]o the extent that Rule 17(c) imposes some reasonableness limitation on grand jury subpoenas . . . [the Court's] task is to define it." *Id.* at 300. The Court then rejected the *Nixon* standard, applying to trial subpoenas, and adopted the following standard: "[W]here . . . a subpoena is challenged on relevancy grounds, the motion to quash must be denied unless the district court determines that there is no reasonable possibility that the category of materials the Government seeks will produce information relevant to the general subject of the grand jury's investigation." *Id.* at 301. That this standard is of constitutional significance—as opposed to federal grand juries generally—goes too far.[10]

Having concluded the invocation of the Grand Jury Clause is illusory, I return to the majority's preemption finding. Although the Supreme Court has approved of the doctrine of obstacle preemption (or frustration-of-purpose

---

[10] And it is generally understood that Congress controls the Supreme Court's rulemaking authority to promulgate rules of federal criminal procedure. *See* 28 U.S.C. § 2072(a). Indeed, Congress has regulated grand-jury practice and procedure through amendments to the federal rules. From 2001 to 2004, Congress expanded the disclosure provisions in Rule 6(e) three times. *See* USA PATRIOT Act, Pub. L. No. 107-56, 115 Stat. 272, 279–80 (2001); Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, 2256–57 (2002); Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, 118 Stat. 3638, 3760 (2004). Of course, this discussion only has significance if New Mexico's rule is deemed to be "procedural" in form—that is, it is a rule of procedure infringing upon the federal rules. But, as the majority concedes, that is not the case here. Following *Colorado Supreme Court II*'s framework, New Mexico's rule is clearly one governing ethics.

15

preemption), *see Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373

(2000), the doctrine has been heavily criticized, *see generally* Caleb Nelson,

*Preemption*, 86 Va. L. Rev. 225 (2000), and the Court has been sensitive to its

over application.  The Court has directed that in obstacle preemption cases,

"There is no federal pre-emption *in vacuo*, without a constitutional text or a

federal statute to assert it."  *Puerto Rico Dep't of Consumer Affairs v. Isla

Petroleum Corp.*, 485 U.S. 495, 503 (1988).[11]

Notwithstanding the Court's sensitivity and criticism to the doctrine, *see

also Sprietsma v. Mercury Marine*, 537 U.S. 51, 123 (2002), the Court has

continued to apply it to invalidate state laws that stand as obstacles to the purpose

of a particular federal statutory scheme, *see* Richard H. Fallon, Jr. et al., *Hart and

Wechsler's The Federal Courts and The Federal System* 648 (6th ed. 2009) (citing

Daniel J. Meltzer, *The Supreme Court's Judicial Passivity*, 2002 Sup. Ct. Rev.

343 (2002)).  Thus, in such cases, the Court generally departs from traditional

---

[11]  Justice Thomas, in no less than four recent opinions, has questioned the constitutional lineage of the doctrine.  *See Wyeth v. Levine*, 555 U.S. 555, 604 (2009) (Thomas, J., concurring in judgment); *Arizona*, 132 S. Ct. at 2524 (Thomas, J., concurring in part and dissenting in part); *Williamson v. Mazda Motor of Am.*, 562 U.S. 323, 340 (2011) (Thomas, J., concurring in judgment); *Haywood v. Drown*, 556 U.S. 729 767 (2009) (Thomas, J., dissenting).  In Justice Thomas's words, obstacle preemption "is inconsistent with the Constitution because it invites courts to engage in freewheeling speculation about congressional purpose that roams well beyond statutory text. . . . Under the Supremacy Clause, pre-emptive effect is to be given to congressionally enacted laws, not to judicially divined legislative purposes."  *Arizona*, 132 S. Ct. at 2524 (citation omitted).

16

canons of statutory interpretation by looking past the plain language of the statute and focusing on legislative intent to divine the full purpose and objectives of Congress. *See Cal. Div. of Labor Standards Enf't v. Dillingham Constr., N.A.*, 519 U.S. 316, 335–36 (1997) (Scalia, J., concurring); *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 868, 870 (2000) (quoting *United States v. Locke*, 529 U.S. 89, 106 (2000)). But still, the purposes and objectives are those of Congress, not the courts. *Cf. Atherton v. FDIC*, 519 U.S. 213, 218 (1997) ("'Whether latent federal power should be exercised to displace state law is primarily a decision for Congress,' not the federal courts." (quoting *Wallis v. Pan Am. Petroleum Corp.*, 384 U.S. 63, 68 (1966)).

With that, I fully recognize the grand jury's special position. *See, e.g.*, *R. Enters.*, 498 U.S. at 297 (noting grand jury's "unique role in our criminal justice system"). But the grand jury's unique role does not mean federal grand juries are immune from congressional regulation absent some constitutional directive stating otherwise. Majority Op. 68 (citing *In re Grand Jury*, 111 F.3d 1066, 1073 (3d Cir. 1997) ("Just as grand juries must operate within the confines of the Constitution, so too must they comply with the limitations imposed on them by Congress (as long as those limitations are not unconstitutional).")). Regulation of grand juries via a federal statute, of course, is precisely that. The majority does not hold that Congress lacks the power to say federal prosecutors in the grand jury context are bound by standards mirroring New Mexico's. That it did so more

17

indirectly—but still expressly, by a general reference to ethics rules—makes no difference.  In short, the question of whether the McDade Amendment authorizes a rule's application as ethical in no way depends on whether that rule's application to federal prosecutors may have the effect of changing their conduct. To the contrary, *Colorado Supreme Court II* and the statute's plain meaning make clear that any obstacle created by state law here exists pursuant to Congress's express intent.[12]

## II.  Conclusion

In sum, without some indication that Rule 16-308(E) stands as an obstacle to the accomplishment and execution of *Congress's* purposes and objectives, I respectfully dissent from the majority's determination that the rule conflicts with federal interests and is thus preempted.

---

[12]  I note that one judge has concluded in a separate opinion that an Illinois rule identical to the one here would apply to federal prosecutors by virtue of the McDade Amendment, citing *Colorado Supreme Court II* for support.  *See United States v. Williams*, 698 F.3d 374, 391–92 (7th Cir. 2012) (Hamilton, J., concurring in part and dissenting in part).  *See also United States ex rel. U.S. Attorneys for the E. & W. Dists. of Ky. v. Ky. Bar Ass'n*, 439 S.W.3d 136, 146 (Ky. 2014) ("In our view, E–435 survives scrutiny under [the McDade Amendment] and the Supremacy Clause because it is simply an ethical rule and does not affect federal substantive, procedural, or evidentiary law." (footnote omitted)).